**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

```
-----------------------------X
                             :
ALEXANDER ROSA              :       Civil No. 3:22CV00703(SALM)
                             :
v.                           :
                             :
ROLLIN COOK, et al.          :       July 28, 2022
                             :
-----------------------------X
```

<u>**INITIAL REVIEW ORDER**</u>

Self-represented plaintiff Alexander Rosa ("plaintiff") is a sentenced inmate in the custody of the Connecticut Department of Correction ("DOC"), currently housed at the Garner Correctional Institution ("Garner").[1] Plaintiff brings this action pursuant to 42 U.S.C. §1983 against ten defendants: Rollin Cook, former Commissioner of Correction ("Cook"); William Mulligan, former District Administrator ("Mulligan"); Warden Amonda Hannah ("Warden Hannah"); Captain/Correctional Officer

---

[1] The Court may take judicial notice of matters of public record. <u>See, e.g.</u>, <u>Mangiafico v. Blumenthal</u>, 471 F.3d 391, 398 (2d Cir. 2006); <u>United States v. Rivera</u>, 466 F. Supp. 3d 310, 313 (D. Conn. 2020) (taking judicial notice of BOP inmate location information); <u>Ligon v. Doherty</u>, 208 F. Supp. 2d 384, 386 (E.D.N.Y. 2002) (taking judicial notice of state prison website inmate location information). The Court takes judicial notice of the Connecticut DOC website, which reports that plaintiff is a sentenced inmate. <u>See</u> Connecticut State Department of Correction, <u>Inmate Information</u>, http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=381946 (last visited July 28, 2022).

Tolmie ("Captain Tolmie"); Correctional Officer ("C.O.") Vesera; C.O. Blekis; C.O. Pelliteri; Captain/Correctional Officer Hughes ("Captain Hughes"); Captain/Correctional Officer Syed ("Captain Syed"); and C.O. Mendez (hereinafter sometimes collectively referred to as "defendants"). See Doc. #1 at 1, 2-3. The incidents at issue in the Complaint occurred while plaintiff was housed at Garner. See generally Doc. #1. All defendants are sued in their official and individual capacities. See id. at 3.

I.   **LEGAL STANDARD**

Under section 1915A of Title 28 of the United States Code, the Court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. §1915A(a). The Court then must "dismiss the complaint, or any portion of the complaint, if" it "is frivolous or malicious, or fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. §1915A(b). The commands of §1915A "apply to all civil complaints brought by prisoners against governmental officials or entities regardless of whether the prisoner has paid the filing fee." Carr v. Dvorin, 171 F.3d 115, 116 (2d Cir. 1999) (per curiam). Dismissal under this provision may be with or without prejudice. See Shakur v. Selsky, 391 F.3d 106, 112 (2d Cir. 2004).

A civil complaint must include sufficient facts to afford defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a plausible right to relief. See Bell Atlantic v. Twombly, 550 U.S. 544, 555-56 (2007). Conclusory allegations are not sufficient. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Rather, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570.

It is well-established that complaints filed by self-represented litigants "'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" Sykes v. Bank of Am., 723 F.3d 399, 403 (2d Cir. 2013) (quoting Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006)); see also Tracy v. Freshwater, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for self-represented litigants). However, even self-represented parties must comply with Rule 8 and the other rules of pleading applicable in all federal cases. See Harnage v. Lightner, 916 F.3d 138, 141 (2d Cir. 2019); see also Wynder v. McMahon, 360 F.3d 73, 79 n.11 (2d Cir. 2004) ("[T]he basic requirements of Rule 8 apply to self-represented and counseled plaintiffs alike.").

## II.   <u>ALLEGATIONS OF THE COMPLAINT</u>

The Court accepts the well-pleaded allegations of the Complaint as true for purposes of this initial review.

On August 20, 2019, plaintiff "filed a PREA claim against McDougall-Walker Correctional Institution for an alleged improper strip search[.]" Doc. #1 at 4, ¶1 (sic).[2] On August 21, 2019, while at Garner, plaintiff "allegedly committed an offense" and was directed to enter his cell in order to "be escorted to ... Inpatient Medical Unit Housing for mental health level 5 inmates." <u>Id.</u> at 4, ¶2 (sic).

Plaintiff was "upset with the decision" and "was not compliant." <u>Id.</u> "Their was multiple verbal interventions[,]" but plaintiff "needed to use the bathroom[.]" <u>Id.</u> at 4, ¶3 (sic). Captain Tolmie "maliciously and sadistically sprayed" plaintiff's "genitals and buttocks area[]" multiple times with a chemical agent while plaintiff "was defecating ... for the purpose of causing pain[.]" <u>Id.</u> "Upon information and belief" Captain Tolmie sprayed plaintiff in retaliation for filing the PREA claim. Doc. #1 at 10, ¶24.[3]

_____

[2] This facility will be referred to as "MacDougall" hereinafter.

[3] Plaintiff also alleges: "Defendant Captain Tolmie knew that I found a loophole to beat a ticket based on wording which used 'advisor' and at the time of this excessive force claim and illegal mattress I was misbehaving all my offenses were dismissed due to allegedly having mental health issues." <u>Id.</u>

After being sprayed with the chemical agent, plaintiff "placed [his] wrist through the trap but [his] right arm was in the sling" due to a collarbone injury. Id. at 4, ¶4. "Defendant Vesera and/or Defendant Blekis yanked [plaintiff's] sling[,]" which injured plaintiff's right shoulder, causing pain. Id. at 4-5, ¶5. C.O. Vesera and C.O. Blekis "cuffed [plaintiff's] wrist so tight it cut off the circulation of [plaintiff's] wrist." Id. at 5, ¶6.

Plaintiff was then escorted to the "I.P.M." while in extreme pain from the chemical agent. See id. at 5. ¶7.[4] There, "defendants Vesera, Pelliteri, Blekis, Palmieri, Mendez violently stripped [plaintiff] of [his] clothing." Id. at 5, ¶8.[5] "Defendants Vesera, Pelliteri, Blekis, Mendez put [plaintiff's] wrist all the way in the back towards the back of [his] neck[,]" which violated "doctors orders" that plaintiff be cuffed in the front. Doc. #1 at 5, ¶9 (sic). This "cause[d] lots of pain." Id.

The mattress in plaintiff's I.P.M. cell "was a two inch grey mattress, ... which smelled like urine, body odor, and

_____

(sic).

[4] As used in this Order, "I.P.M." is an initialism for the Inpatient Medical Unit. See Doc. #1 at 4, ¶2.

[5] "Palmieri" is not named as a defendant in the caption of the Complaint. The Court does not consider any claims against this individual. See Fed. R. Civ. P. 10(a) ("The title of the complaint must name all the parties[.]").

feces. The blanket was also dirty had paint stains and smelled like it was soiled with urine." Id. at 6, ¶12 (sic). The cell was cold, and plaintiff "only had a Ferguson Gown and one safety blanket[.]" Id. Plaintiff "requested that the mattress be replaced with a legal size and depth mattress ... and [he] requested to replace the banket[,]" but "[t]he unit officers said no." Id.

Plaintiff "wrote and spoke to defendant Captain Syed and defendant Captain Hughes who supervised the incident." Id. at 7, ¶18. Plaintiff told "these defendants that they should've intervene[.]" Id. at 7-8, ¶18 (sic). Captain Syed and Captain Hughes "did not respond" to plaintiff. Id. at 8, ¶18.

Plaintiff filed two Inmate Administrative Remedy Forms related to the above-referenced incidents. See Doc. #1 at 8, ¶¶19-20. The first form was directed to the use of chemical agent; the handcuffing; and the strip search. See id. at 8, ¶19; see also id. at 20-23. The second form was directed to the condition of plaintiff's mattress and blanket. See id. at 8, ¶20; see also id. at 29-32. Warden Hannah denied both grievances. See id. Plaintiff appealed both decisions. See Doc. #1 at 9, ¶¶21-22; see also id. at 26, 35. Defendant Mulligan denied both of the appeals. See id.

Plaintiff separately alleges that he "wanted to smudge after [he] was off Q-15 status." Doc. #1 at 11, ¶24. Plaintiff asked "the officers, lieutenant, and captain if [he] can smudge[,]" and "they said no." Id. Warden Hannah would not allow plaintiff to "dry smudge or nothing." Id. Plaintiff alleges: "[T]he defendants denied me to practice my religion while I was in a state of a mental health crisis." Id. at 12, ¶24.

Plaintiff seeks compensatory and punitive damages. See id. at 15-17. Plaintiff also seeks various forms of declaratory and injunctive relief. See id. at 13-15.

## III. **DISCUSSION**

Plaintiff's Complaint [Doc. #1] suffers from several pleading deficiencies. The Court addresses each in turn.

### A.   Official Capacity Claims for Money Damages

Plaintiff asserts claims against defendants in both their individual and official capacities for money damages. See Doc. #1 at 3, 15-17. Any claims for money damages against the defendants, who are state employees, in their official capacities, are barred by the Eleventh Amendment. See Kentucky v. Graham, 473 U.S. 159, 169 (1985). "Section 1983 does not abrogate state sovereign immunity. Nor has [plaintiff] alleged any facts suggesting that the state has waived immunity in this case." Kerr v. Cook, No. 3:21CV00093(KAD), 2021 WL 765023, at *5 (D. Conn. Feb. 26, 2021) (citation omitted). Accordingly, all

claims for money damages against the defendants in their
official capacities are **DISMISSED, with prejudice.**

B.   <u>Misjoinder of Free Exercise Claims</u>

Plaintiff alleges: "[T]he defendants denied me to practice
my religion[.]" <u>Id.</u> at 12, ¶24. The only defendant specifically
alleged to have participated in this deprivation is Warden
Hannah who "wouldn't let [plaintiff] dry smudge or nothing." <u>Id.</u>
at 11, ¶24 (sic). It appears that plaintiff attempts to assert a
First Amendment Free Exercise claim.

Federal Rule of Civil Procedure 20 permits joinder of
multiple defendants in one action only if "they assert any right
against them jointly, severally, or in the alternative with
respect to or arising out of the same transaction, occurrence,
or series of transactions and occurrences; <u>and</u> ... any question
of law or fact common to all defendants will arise in the
action." Fed. R. Civ. P. 20(a)(2) (emphasis added). "What will
constitute the same transaction or occurrence under the first
prong of Rule 20(a) is approached on a case by case basis."
<u>Dixon v. Scott Fetzer Co.</u>, 317 F.R.D. 329, 331 (D. Conn. 2016)
(citation and quotation marks omitted). "The same transaction
requirement means that there must be some allegation that the
joined defendants conspired or acted jointly." <u>Arista Recs. LLC</u>
<u>v. Does 1-4</u>, 589 F. Supp. 2d 151, 154 (D. Conn. 2008) (citation
and quotation marks omitted). As the Second Circuit has observed

in the Rule 13 context,[6] whether two claims arise out of the same transaction depends upon "the logical relationship" between the claims and "whether the essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit." Harris v. Steinem, 571 F.2d 119, 123 (2d Cir. 1978) (citations, footnotes, and quotation marks omitted). The mere fact that the same statute may be at issue in two claims is insufficient to render them sufficiently related so as to support joinder. "Misjoinder of unrelated claims against multiple defendants is a particular concern in prisoner-initiated cases because of the applicability of the three strikes and filing fee provisions of the Prison Litigation Reform Act." Urbanski v. Dep't of Corr., No. 3:18CV01323(VLB), 2019 WL 6683047, at *8 (D. Conn. Dec. 5, 2019).

Plaintiff's claims relating to the alleged violations of his right to Free Exercise are unrelated to the other claims of the Complaint. They are unrelated temporally; plaintiff appears to allege that he made a request to "smudge" while he was still in the I.P.M., he expressly asserts that he only sought to

---

[6] "In construing the term 'transaction or occurrence' under Rule 20, many courts have drawn guidance from the use of the same term in Rule 13(a), applying to compulsory counterclaims." Barnhart v. Town of Parma, 252 F.R.D. 156, 160 (W.D.N.Y. 2008) (citation omitted).

engage in this religious activity "after [he] was off Q-15 status." Doc. #1 at 11, ¶24. He does not contend that the denial of his ability to engage in this religious activity occurred while he was subject to the conditions of confinement complained of in the I.P.M.

Plaintiff's Free Exercise claims are also substantively distinct from his Eighth Amendment conditions of confinement and excessive force claims. Only Warden Hannah is expressly named in the First Amendment allegation, but as will be discussed below, plaintiff fails to make any allegation that Warden Hannah was personally involved in the alleged Eighth Amendment violations.

In sum, the Eighth Amendment (and state law assault) claims involve facts and analyses entirely separate and distinct from those involved in plaintiff's Free Exercise claim. These claims arise under different legal theories and do not raise common questions of law or fact. See, e.g., Webb v. Maldonaldo, No. 3:13CV00144(RNC), 2013 WL 3243135, at *3 (D. Conn. June 26, 2013) ("In this case, the complaint joins in one action claims that are wholly unrelated. For instance, it asserts Eighth Amendment claims of excessive force against some of the defendants, while also asserting a First Amendment claim against other defendants based on a DOC policy prohibiting certain sexually explicit materials."). Thus, plaintiff's "claims are

improperly joined in this action in violation of Rule 20."
Lindsay v. Semple, No. 3:19CV00751(JCH), 2019 WL 3317320, at *11
(D. Conn. July 24, 2019) (claims were improperly joined where
the "claims arise under different legal theories and do not
contain any questions of law or fact common to the due process
claim").

"The court may ... sever any claim against a party." Fed.
R. Civ. P. 21. The Court finds that plaintiff's Free Exercise
claim is misjoined. Plaintiff's Free Exercise claim, including
all related declaratory and/or injunctive relief sought, is
therefore "dismissed without prejudice to the right of
[plaintiff] to bring a properly pled lawsuit." Kalie v. Bank of
Am. Corp., 297 F.R.D. 552, 559 (S.D.N.Y. 2013).

C.   Personal Involvement

The Complaint does not adequately allege the personal
involvement of defendants Warden Hannah, Mulligan, and Cook in
the alleged Eighth Amendment violations.

"It is well settled in this Circuit that personal
involvement of defendants in alleged constitutional deprivations
is a prerequisite to an award of damages under §1983, as there
is no respondeat superior liability in §1983 cases[.]" Komondy
v. Gioco, 253 F. Supp. 3d 430, 456 (D. Conn. 2017) (citation and

11

quotation marks omitted).[7] Thus, "a plaintiff must plead that
each Government-official defendant, through the official's own
individual actions, has violated the Constitution." Iqbal, 556
U.S. at 676; accord Tangreti v. Bachmann, 983 F.3d 609, 618 (2d
Cir. 2020) ("[T]here is no special rule for supervisory
liability. Instead, a plaintiff must plead and prove that each
Government-official defendant, through the official's own
individual actions, has violated the Constitution. The factors
necessary to establish a §1983 violation will vary with the
constitutional provision at issue because the elements of
different constitutional violations vary. The violation must be
established against the supervisory official directly."
(citation and quotation marks omitted)); see also Logan v.
Graham, No. 9:18CV00291(ML), 2021 WL 4440344, at *4 (N.D.N.Y.
Sept. 28, 2021) ("District courts discussing Tangreti agree that
the decision invalidated the Colon test and mandates that a
plaintiff must establish a violation against the supervisory
official directly." (citation and quotation marks omitted)).

---

[7] "The requirement of pleading each defendant's personal
responsibility does not apply to ... requests for equitable
relief. Instead, it is sufficient if the plaintiff names an
appropriate supervisory defendant in his official capacity for
purposes of imposing appropriate equitable relief." Young v.
Choinski, 15 F. Supp. 3d 172, 193 (D. Conn. 2014) (citation and
quotation marks omitted). The requests of equitable relief are
being dismissed on other grounds.

Plaintiff alleges that Warden Hannah denied his grievances. See Doc. #1 at 8, ¶¶19, 20. Plaintiff has not alleged that Warden Hannah personally participated in the alleged constitutional violations. Rather, he complains only that she rejected his grievances relating to the alleged violations after they were committed by others. "Warden Hannah's sole action ... was to deny Plaintiff's grievance ... after the incident ... had concluded. Plaintiff's allegation, which bespeaks of neither direct nor indirect involvement in [the] course of conduct, is insufficient to support a purported violation of Plaintiff's" Eighth Amendment rights. Johnson v. Cook, No. 3:19CV01464(CSH), 2021 WL 2741723, at *12 (D. Conn. July 1, 2021). Accordingly, all claims asserted against Warden Hannah in her individual capacity for monetary damages are **DISMISSED, without prejudice**, for lack of personal involvement.

Plaintiff alleges that defendant Mulligan denied his two grievance appeals after the alleged Eighth Amendment violations had been committed by others. See Doc. #1 at 9, ¶21. Plaintiff asserts: "The actions of defendant William Mulligan was oversight for the situations and grievances filed between the excessive force, illegal size & depth soiled mattress and painted stain blanket that was soiled, and attempting to practice religion he failed to recognize a violation of my

constitutional rights." Doc. #1 at 13, ¶29 (sic). Plaintiff's
allegations do not establish Mulligan's personal involvement in
the alleged constitutional deprivations. "Since <u>Tangreti</u>,
district courts have held that review of a grievance,
administrative, or disciplinary appeal is insufficient to
establish the reviewer's personal involvement in claims relating
to the underlying proceeding." <u>Muniz v. Cook</u>, No.
3:20CV01533(MPS), 2021 WL 5919818, at *6 (D. Conn. Dec. 15,
2021) (collecting cases). Accordingly, all claims asserted
against Mulligan in his individual capacity for monetary damages
are **DISMISSED, without prejudice**, for lack of personal
involvement. <u>See</u> <u>Rooks v. Santiago</u>, No. 3:20CV00299(MPS), 2021
WL 2206600, at *3 (D. Conn. June 1, 2021) ("Rooks' allegations
about District Administrator Mulligan denying his grievance
appeals ... are not sufficient to raise an inference that
District Administrator Mulligan had any direct involvement in
the alleged Fourteenth Amendment violation arising from his SRG
affiliation or SRG phase placement.").

 Turning next to defendant Cook, there are again no factual
allegations implicating Cook in any constitutional violation.
Plaintiff merely asserts that through Cook's "indirect
actions[,]" and the fact that Cook is allegedly "in charge" of
defendants and "training" all staff, should be sufficient to

14

implicate liability on him. Doc. #1 at 13, ¶30. Plaintiff has failed to allege facts establishing that defendant Cook, "through [his] own individual actions, has violated the Constitution." Iqbal, 556 U.S. at 676. Accordingly, all claims asserted against Cook in his individual capacity for monetary damages are **DISMISSED, without prejudice**, for lack of personal involvement. See, e.g., Simms v. Durant, No. 3:20CV01719(KAD), 2021 WL 293567, at *4 (D. Conn. Jan. 27, 2021) (dismissing claims against defendants where "there are simply no allegations that Defendants ... had any personal involvement in the purported constitutional deprivation[]").

D.   Retaliation

Plaintiff alleges that Captain Tolmie retaliated against him for filing a PREA claim. See Doc. #1 at 4, ¶¶1-2; id. at 10, ¶24. The Court construes this as a First Amendment retaliation claim.[8]

> To state a First Amendment retaliation claim sufficient
> to withstand a motion to dismiss, a plaintiff must allege
> (1) that the speech or conduct at issue was protected,
> (2) that the defendant took adverse action against the
> plaintiff, and (3) that there was a causal connection
> between the protected speech and the adverse action.

---

[8] Unlike the Free Exercise claim, this First Amendment claim is properly joined with the Eighth Amendment claims because it relates to the alleged motivation behind the use of force against plaintiff.

Dolan v. Connolly, 794 F.3d 290, 294 (2d Cir. 2015) (citation
and quotation marks omitted). The Second Circuit has "instructed
district courts to approach prisoner retaliation claims with
skepticism and particular care, because virtually any adverse
action taken against a prisoner by a prison official - even
those otherwise not rising to the level of a constitutional
violation - can be characterized as a constitutionally
proscribed retaliatory act." Id. at 295 (citation and quotation
marks omitted). Accordingly, claims asserting retaliation must
"be supported by specific and detailed factual allegations, not
stated in wholly conclusory terms." Id. (citation and quotation
marks omitted).

For purposes of initial review, plaintiff has adequately
alleged the first two elements of a retaliation claim. The third
element, however, is deficient. Plaintiff has failed to plead
sufficient facts to allege that the filing of the PREA claim
"was a substantial or motivating factor for the adverse actions
taken by" Captain Tolmie. Bennett v. Goord, 343 F.3d 133, 137
(2d Cir. 2003). Plaintiff alleges that (1) on August 19, 2019,
he "filed a PREA claim against McDougall-Walker Correctional
Institution" in connection with a strip search, and (2) the next
day Captain Tolmie deployed the chemical agent. See Doc. #1 at
4, ¶¶1-2 (sic). Plaintiff does not allege that Captain Tolmie

had any knowledge of the PREA claim, which related to events at a different facility. The allegations of the Complaint do not allege, let alone suggest, why Captain Tolmie would be motivated to retaliate against plaintiff for a "PREA claim" that has no relation to Captain Tolmie. Id. "Although ... temporal proximity between protected conduct and an adverse action constitutes circumstantial evidence of retaliation," the Second Circuit has "consistently required some further evidence of retaliatory animus before permitting a prisoner to proceed to trial on a retaliation claim." Washington v. Afify, 681 F. App'x 43, 46 (2d Cir. 2017). On the facts alleged, plaintiff has failed establish that Captain Tolmie had a retaliatory animus against plaintiff for the filing of the PREA claim.

Accordingly, plaintiff's retaliation claim is **DISMISSED, without prejudice.**

E.   Conditions of Confinement – Unsanitary Blanket and Mattress

Plaintiff attempts to assert an unconstitutional conditions of confinement claim with respect to the condition of his mattress and blanket while he was held in the I.P.M. See generally Doc. #1 at 6, ¶¶12-13. Plaintiff alleges that he requested a new mattress and blanket from "the unit officers[,]" but they "said no." Id. at 6, ¶12. Plaintiff's claim is deficient in several respects.

17

First, plaintiff does not allege that any individually named defendant was aware of the condition of the mattress and/or blanket. Plaintiff also does not allege that any individually named defendant refused his request for a new mattress and blanket. "Where a complaint fails to contain any substantive allegations concerning a defendant named in the caption, it fails to state a claim as to that defendant." Diggs v. City of New York, No. 17CV01127(VEC)(HBP), 2018 WL 5924413, at *3 (S.D.N.Y. Aug. 17, 2018), report and recommendation adopted, 2018 WL 4666073 (Sept. 27, 2018). Thus, this allegation fails to state a claim against any named defendant.

Second, the Complaint fails to state a claim for which relief may be granted on this basis.

> To state an Eighth Amendment claim based on conditions of confinement, an inmate must allege that: (1) objectively, the deprivation the inmate suffered was sufficiently serious that he was denied the minimal civilized measure of life's necessities, and (2) subjectively, the defendant official acted with a sufficiently culpable state of mind, such as deliberate indifference to inmate health or safety.

Walker v. Schult, 717 F.3d 119, 125 (2d Cir. 2013) (citation and quotation marks omitted).

"The objective element is satisfied by a showing that the plaintiff's conditions pose an unreasonable risk of serious damage to his health, which may include establishing a deprivation of basic human needs such as safe and sanitary

living conditions." Garraway v. Griffin, 707 F. App'x 16, 18 (2d Cir. 2017) (citation and quotation marks omitted). "[S]leep is critical to human existence, and conditions that prevent sleep have been held to violate the Eighth Amendment." Walker, 717 F.3d at 127. Under some circumstances, "the condition of a prisoner's mattress may be so inadequate as to constitute an unconstitutional deprivation." Id.

The Complaint does not allege how long plaintiff was exposed to the allegedly unsanitary mattress, but attachments to the Complaint state that plaintiff was in the I.P.M. for "20 days[.]" Doc. #1 at 30. For initial review purposes, the Court will assume that plaintiff has alleged facts sufficient to support the objective element of this claim. Cf. McNatt v. Unit Manager Parker, No. 3:99CV01397(AHN), 2000 WL 307000, at *2, *4 (D. Conn. Jan. 18, 2000) (Where the plaintiffs were subjected to mattresses with "holes and urine stains that smelled of mildew and 'foul matter[]'" for eleven to fifteen days, there was no Eighth Amendment violation given the "brief duration of the deprivation[.]").

As to the subjective prong, however, "plaintiff must show that the defendant acted with more than mere negligence. To constitute deliberate indifference, the prison official must know of, and disregard, an excessive risk to inmate health or

19

safety." <u>Walker</u>, 717 F.3d at 125 (citation and quotation marks omitted). Because plaintiff has not alleged that any individual defendant was aware of the unsanitary mattress and blanket, plaintiff has failed to adequately plead the subjective element of his claim.

Accordingly, plaintiff's Eighth Amendment conditions of confinement claim related to the condition of his mattress and blanket while he was housed in the I.P.M. unit is **DISMISSED, without prejudice.**

> F.   <u>Conditions of Confinement – Excessive Force</u>

The Complaint appears to assert three claims for the use of excessive force relating to: (1) the deployment of a chemical agent; (2) tight handcuffing; and (3) strip search.

The Eighth Amendment protects against punishments that "involve the unnecessary and wanton infliction of pain." <u>Gregg v. Georgia</u>, 428 U.S. 153, 173 (1976).

> To state an Eighth Amendment claim, a prisoner must allege two elements, one subjective and one objective. First, the prisoner must allege that the defendant acted with a subjectively sufficiently culpable state of mind. Second, he must allege that the conduct was objectively harmful enough or sufficiently serious to reach constitutional dimensions. Analysis of the objective prong is context specific, and depends upon the claim at issue[.]

<u>Crawford v. Cuomo</u>, 796 F.3d 252, 256 (2d Cir. 2015) (citations and quotation marks omitted).

To meet the objective component, the inmate must allege

that the defendant's conduct was serious enough to have violated "contemporary standards of decency." Hudson v. McMillian, 503 U.S. 1, 8 (1992) (citation and quotation marks omitted). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated." Id. at 9; see also Wilkins v. Gaddy, 559 U.S. 34, 37 (2010).

When an inmate alleges use of excessive force by a correctional officer, "the core judicial inquiry is ... whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson, 503 U.S. at 7. "In determining whether the use of force was wanton and unnecessary, it may also be proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." Id. (citation and quotation marks omitted).

1.   *Chemical Agent*

"The Supreme Court has held that prison officials should be afforded a wide range of deference concerning their efforts to preserve internal order and discipline and to maintain institutional security. Courts within this district have held that use of a chemical agent is an acceptable means of gaining control of a disruptive inmate." Baltas v. Rivera, No.

21

3:19CV01043(MPS), 2020 WL 6199821, at *14 (D. Conn. Oct. 22, 2020) (citation and quotation marks omitted). However, the "[i]nfliction of pain that is totally without penological justification is per se malicious." Alston v. Butkiewicus, No. 3:09CV00207(CSH), 2012 WL 6093887, at *14 (D. Conn. Dec. 7, 2012) (citation and quotation omitted).

Plaintiff expressly admits that prior to the deployment of the chemical spray he "was not compliant" and there "was multiple verbal interventions." Doc. #1 at 4, ¶¶2-3. Plaintiff also alleges, however, that Captain Tolmie sprayed plaintiff's genitals "7 to 8 times[]" in retaliation for filing a PREA claim, rather than for legitimate penological reasons. See id. at 10, ¶23. Construing the allegations in plaintiff's favor, and for purposes of this initial review, the Court will permit this claim to proceed against Captain Tolmie for further development.

### 2. Handcuffs

Plaintiff alleges: "Defendants Officer Vesera and Officer Blekis cuffed my wrist so tight it cut off the circulation of my wrist." Doc. #1 at 5, ¶6.

"There is consensus among courts in this circuit that tight handcuffing does not constitute excessive force unless it causes some injury beyond temporary discomfort." Shehan v. Erfe, No. 3:15CV01315(MPS), 2017 WL 53691, at *10 (D. Conn. Jan. 4, 2017) (citation and quotation marks omitted). "[T]o sufficiently

plead an excessive force claim based upon tight handcuffing, the plaintiff must allege more than a temporary injury." Burroughs v. Mitchell, 325 F. Supp. 3d 249, 270 (N.D.N.Y. 2018).

Here, plaintiff alleges only that the restraints were "so tight" that they "cut off the circulation" to his "wrist." Doc. #1 at 5, ¶6. Plaintiff does not allege any resulting permanent or significant injury. Accordingly, the Complaint fails to state an excessive force claim against C.O. Vesera and/or C.O. Blekis related to the tight handcuffing. See Burroughs, 325 F. Supp. 3d at 270 ("In the absence of any facts alleging a permanent injury as a result of this handcuffing, plaintiff has failed to state a cause of action under §1983 and this claim will be dismissed."). Accordingly, the excessive force claim against C.O. Vesera and/or C.O. Blekis related to the tight handcuffing is **DISMISSED, without prejudice.**

During the course of this cuffing, plaintiff also alleges that C.O. Vesera and C.O. Blekis "yanked" plaintiff's sling, which injured his right shoulder and caused pain. Doc. #1 at 4-5, ¶5. These allegations do not "allege facts from which it could be inferred that [C.O. Vesera and C.O. Blekis] subjected [plaintiff] to excessive force, and did so maliciously and sadistically[.]" Sims v. Artuz, 230 F.3d 14, 22 (2d Cir. 2000). Accordingly, the excessive force claim against C.O. Vesera and

C.O. Blekis related to the alleged "yank[]" on plaintiff's sling is **DISMISSED, without prejudice.**

Next, plaintiff alleges: "Defendants Vesera, Pelliteri, Blekis, Palmieri, Mendez put my wrist all the way in the back towards the back of my neck of which I have a doctors order to be cuffed in the front this cause lots of pain." Doc. #1 at 5, ¶9 (sic). These allegations do not "allege facts from which it could be inferred that [Vesera, Pelliteri, Blekis, or Mendez] subjected [plaintiff] to excessive force, and did so maliciously and sadistically[.]" Sims, 230 F.3d at 22. Nor are there any allegations that any defendant was aware of the doctor's front cuffing order. Accordingly, the excessive force claim against C.O. Vesera, C.O. Pelliteri, C.O. Blekis, and C.O. Mendez related to the handcuffing of plaintiff behind his back is **DISMISSED, without prejudice.**

> 3.   *Strip Search*

Plaintiff alleges that upon reaching the I.P.M., "defendants Vesera, Pelliteri, Blekis, Palmieri, Mendez violently stripped [plaintiff] of [his] clothing it felt as if I was being raped and violated." Doc. #1 at 5, ¶8 (sic). This is the extent of the factual allegations with respect to the strip search.

"Under certain limited circumstances, the manner in which a search is conducted may give rise to an Eighth Amendment claim.

24

However, courts are generally reluctant to conclude that strip searches – even where an inmate alleges aggressive or inappropriate behavior — rise to the level of objectively serious enough to constitute an Eighth Amendment violation." Green v. Martin, 224 F. Supp. 3d 154, 168 (D. Conn. 2016) (citation and quotation marks omitted). "The 'principal inquiry' a court must make is whether the contact is incidental to legitimate official duties, such as a justifiable pat frisk or strip search, or by contrast whether it is taken to arouse or gratify the officer or humiliate the inmate." Id.

The allegations of the Complaint fail to support an Eighth Amendment violation arising from the strip search. The allegations of the Complaint suggest that the strip search was "incidental to legitimate official duties[,]" and was not undertaken "to arouse, or gratify the officer or humiliate the inmate." Id.; see also id. at 168-69 ("Courts in this Circuit have held that a strip search without elements of sexual harassment, excessive force, or indeed any physical contact at all is not sufficiently serious under the objective prong to support a claim based on cruel and unusual punishment under the Eighth Amendment." (citation and quotation marks omitted)).

Accordingly, all Eighth Amendment claims related to the strip search are **DISMISSED, without prejudice.**

25

*4.   Captain Hughes and Captain Sayed*

Plaintiff alleges: "I wrote and spoke to defendant Captain Sayed and Defendant Captain Hughes who supervised the incident. I told these defendants that they should've intervene" in the deployment of the chemical agent, the handcuffing, and the strip search. Doc. #1 at 7-8, ¶8 (sic).

"An official may ... be liable for failing to intercede where he or she observes excessive force is being used or has reason to know that it will be." El-Massri v. New Haven Corr. Ctr., No. 3:18CV01249(CSH), 2018 WL 4604308, at *6 (D. Conn. Sept. 25, 2018) (citation and quotation marks omitted). To state a claim for failure to intervene to prevent the use of excessive force,

> a plaintiff must allege facts showing that: "(1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer [did] not take reasonable steps to intervene" to prevent the harm. Jean-Laurent v. Wilkinson, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008) (citations omitted), aff'd sub nom. Jean-Laurent v. Wilkerson, 461 F. App'x 18 (2d Cir. 2012).

Id. at *7 (footnote omitted).

Plaintiff conclusorily alleges that Captain Hughes and Captain Sayed "supervised" the incidents at issue. Doc. #1 at 7-8, ¶8. There are no allegations that either defendant was present at, or otherwise witnessed, the incidents, or that

either had a realistic opportunity to intervene.[9] Accordingly, all claims for failure to intervene against Captain Hughes and Captain Syed are **DISMISSED, without prejudice**.[10]

G.   Assault and Battery

"To establish a claim for assault and battery, plaintiff must prove that defendants applied force or violence to h[im] and that the application of force or violence was unlawful." Williams v. Lopes, 64 F. Supp. 2d 37, 47 (D. Conn. 1999). At this stage, the Court will permit the assault and battery claim to proceed against Captain Tolmie for further development of the record. See Outlaw v. City of Hartford, No. 3:07CV01769(GWC), 2015 WL 13646918, at *1 (D. Conn. May 5, 2015) ("The essential elements of a Fourth Amendment excessive-force claim and a

---

[9] Additionally, "the failure to intervene claim is contingent upon the disposition of the primary claims underlying the failure to intervene claim." Levy v. City of New York, 935 F. Supp. 2d 575, 594 (E.D.N.Y. 2013) (citation and quotation marks omitted). Accordingly, the Court's dismissal of all but one of plaintiff's conditions of confinement claims also supports dismissal of the claims against Captain Hughes and Captain Sayed.

[10] The allegations that plaintiff "wrote and spoke" to these defendants are also insufficient to state a claim. See Young v. Choinski, 15 F. Supp. 3d 172, 188–89 (D. Conn. 2014) ("The fact that a prisoner sent a letter or written request to a supervisory official does not establish the requisite personal involvement of the supervisory official."). "Even the fact that an official ignored a letter alleging unconstitutional conduct is not enough to establish personal involvement." Brooks v. Chappius, 450 F. Supp. 2d 220, 226 (W.D.N.Y. 2006) (citation and quotation marks omitted).

state-law assault-and-battery claim are substantially identical.") (citations and quotation marks omitted)). The assault and battery claims against C.O. Vesera, C.O. Pelliteri, C.O. Blekis, and C.O. Mendez are **DISMISSED, without prejudice**.

H.    Requests for Declaratory and Injunctive Relief

Plaintiff seeks declaratory and injunctive relief. See Doc. #1 at 14-15.

First, plaintiff seeks a declaratory judgment that defendants violated his rights. See id. at 14. Plaintiff's request for declaratory relief is unnecessary. See Kuhns v. Ledger, 202 F. Supp. 3d 433, 443 (S.D.N.Y. 2016) ("Dismissal of a declaratory judgment action is warranted where the declaratory relief plaintiff seeks is duplicative of his other causes of action." (citation and alterations omitted)). Additionally, "[d]eclaratory relief operates prospectively to enable parties to adjudicate claims before either side suffers great damages." Orr v. Waterbury Police Dep't, No. 3:17CV00788(VAB), 2018 WL 780218, at *7 (D. Conn. Feb. 8, 2018). Plaintiff's requests for declaratory relief are based solely on his past treatment by defendants. Because they apply to past actions, and are otherwise unnecessary given the asserted claims, plaintiff's requests for declaratory relief are **DISMISSED, with prejudice**.

Second, plaintiff requests that the Court issue the

following injunctive relief:

> [T]o change how the facility Garner conducts a inmate to
> kneel down doggie style while they do a hands on strip
> search ripping your clothes off.
>
> To reprimand and suspend Tolmie, Vesera, Pelliteri,
> Blekis, and Mendez for 14 days without pay.
>
> To enforce a lifetime retraining order against Tolmie,
> Vesera, Pelliteri, Blekis, and Mendez.
>
> To write the plaintiff an apology letter for their
> actions committed.
>
> Limit or change the policy for the use of chemical agents
> being used on a mental health imate.
>
> To order to train employees to use less physical force
> on a mental health inmate ... and to limit the use of
> chemical agents.

Doc. #1 at 14-15 (sic).

Plaintiff expressly sues defendants in their "individual
... capacities." Id. at 3. Plaintiff "cannot obtain prospective
injunctive relief from the Defendants sued in their individual
capacities as such Defendants would not have the authority to
provide such relief in their individual capacities." Kuck v.
Danaher, 822 F. Supp. 2d 109, 143 (D. Conn. 2011); see also
Patterson v. Lichtenstein, No. 3:18CV02130(MPS), 2020 WL 837359,
at *2 (D. Conn. Feb. 20, 2020) ("Injunctive relief is not
available from defendants in their individual capacities[.]").
Accordingly, plaintiff's requests for prospective injunctive
relief against defendants in their individual capacities are

29

**DISMISSED, with prejudice.**

The Court further finds that the requested injunctive relief is not warranted against defendants in their official capacities. "The PLRA provides that the Court shall not grant any prospective relief unless it finds that 'such relief is narrowly drawn, extends no further than necessary to correct the violation of [the] Federal right, and is the least intrusive means necessary to correct the violation of the federal right.'" Webb v. Goord, 197 F.R.D. 98, 103 (S.D.N.Y. 2000) (quoting 18 U.S.C. §3626(a)(1)(A)). The injunctive relief sought by plaintiff is overbroad because it "extends ... further than necessary to correct" the alleged violation of plaintiff's constitutional rights. Id. Plaintiff seeks injunctive relief that would require systemic changes across the Department of Correction. This is not "the least intrusive means necessary to correct" the alleged violations of plaintiff's constitutional rights. 18 U.S.C. §3626(a)(1)(A). Indeed, none of the relief requested is directed to prospective relief of ongoing violations being suffered by plaintiff himself. Id. Additionally, the Complaint "does not assert claims regarding many inmates injured as a result of the absence of the policies [plaintiff] seeks to impose, which is the subject of his request for injunctive relief. Thus, his proposed injunctive relief

30

would not be warranted." <u>Thomas v. Butkiewicus</u>, No. 3:13CV00747(JCH), 2014 WL 6674951, at *4 (D. Conn. Nov. 25, 2014)

Plaintiff's "proposed remedy is far broader than necessary to correct the alleged violation of his rights." <u>Barrington v. New York</u>, 806 F. Supp. 2d 730, 750 (S.D.N.Y. 2011); <u>see, e.g.,</u> <u>id.</u> ("[A] proposed order directing the installation of securities cameras ... is beyond the narrow scope permitted by the PLRA[,]" where complaint alleged only that officers assaulted plaintiff.). Accordingly, plaintiff has failed to state sufficient grounds for the injunctive relief sought, which includes systemic changes not directly related to plaintiff's needs. Accordingly, any claims against defendants in their official capacities for injunctive relief are **DISMISSED, without prejudice**.

Plaintiff requests that the Court order "the defendant to give a copy of the video evidence ... of the excessive force." Doc. #1 at 15. Plaintiff may request to review any video evidence if and when this matter proceeds to fact discovery. Accordingly, this request for injunctive relief is **DISMISSED, with prejudice**, as an element of the Complaint.

## IV. <u>CONCLUSION AND ORDERS</u>

The Court enters the following orders:

The Court finds that this case may proceed to service of

process on the claim for Excessive Force in violation of the Eighth Amendment, and the state law Assault and Battery claim, against **Captain Tolmie**, in his individual capacity, for damages.

All claims asserted against defendants in their official capacities for damages are **DISMISSED, with prejudice.**

All First Amendment Free Exercise claims asserted against Warden Hannah are **DISMISSED, without prejudice to re-filing in a separate, properly pleaded, lawsuit.**

All Eighth Amendment claims asserted against Warden Hannah, Mulligan, and Cook in their individual capacities for damages are **DISMISSED, without prejudice,** for lack of personal involvement.

All First Amendment retaliation claims against defendant Tolmie in his individual capacity for damages are **DISMISSED, without prejudice.**

All Eighth Amendment conditions of confinement claims related to plaintiff's soiled mattress and blanket are **DISMISSED, without prejudice.**

All Eighth Amendment excessive force claims against defendants Vesera, Pelliteri, Blekis, and Mendez in their individual capacities for money damages are **DISMISSED, without prejudice.**

All claims asserted against Captain Hughes and Captain

Sayed in their individual capacities for damages are **DISMISSED, without prejudice.**

All claims for assault and battery against defendants Vesera, Pelliteri, Blekis, and Mendez in their individual capacities for damages are **DISMISSED, without prejudice.**

Plaintiff's requests for declaratory relief are **DISMISSED, with prejudice.**

Plaintiff's requests for prospective injunctive relief against defendants in their individual capacities are **DISMISSED, with prejudice.**

All claims for injunctive relief against defendants in their official capacities are **DISMISSED, without prejudice.**

Plaintiff's request that the Court order "the defendant to give a copy of the video evidence ... of the excessive force[,]" Doc. #1 at 15, is **DISMISSED, with prejudice**, as a substantive cause of action.

**Plaintiff may respond to this Order in one of two ways:**

**OPTION 1:** Plaintiff may proceed **<u>immediately</u>** to service on defendant **Captain Tolmie,** in his individual capacity, for damages, on the excessive force and assault and battery claims. If plaintiff selects this option, he shall file a Notice on the docket on or before **August 29, 2022,** informing the Court that he elects to proceed with service as to the sole remaining

defendant. The Court will then immediately begin the effort to serve process on defendant Captain Tolmie in his individual capacity.

**Or, in the alternative:**

**OPTION 2:** Plaintiff may file an Amended Complaint, correcting the deficiencies identified in this Order. Plaintiff is advised that any Amended Complaint will <u>completely</u> replace the prior complaint in the action. No portion of the original Complaint [Doc. #1] will be incorporated into the Amended Complaint by reference, or considered by the Court. Plaintiff must identify all defendants against whom he asserts his claims in the **<u>caption</u>** of the Amended Complaint, and indicate as to each defendant whether the claims are brought against him or her in his or her official or individual capacity, or both. He must also specifically describe the factual allegations against any defendant in the body of the Amended Complaint. The Amended Complaint may not assert any claim that has already been dismissed **with prejudice.**

Any such Amended Complaint must be filed by **August 29, 2022.** Plaintiff is cautioned that any Amended Complaint must comply with the Federal and Local Rules of Civil Procedure, with special attention to Rule 8. **The original Complaint will not be served on any defendant and will have no effect if an Amended**

34

**Complaint is filed.**

If an Amended Complaint is filed, the Court will review it pursuant to 28 U.S.C. §1915A to determine whether it is sufficient to proceed to service on any defendant. If the Amended Complaint asserts claims that the Court has already explained are not cognizable, such claims will be summarily dismissed. The Court may not grant further leave to amend if the Amended Complaint fails to state a cognizable claim.

**The Clerk shall** send a courtesy copy of the Complaint and this Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

A detailed case management and scheduling order will be entered after counsel appears for any defendant.

**This Initial Review Order does not preclude the filing of a Motion to Dismiss pursuant to Rule 12.** Defendants are encouraged to carefully evaluate the claims that have been permitted to proceed to service, and respond by Answer or Motion, as appropriate.

If plaintiff changes his address at any time during the litigation of this case, he **MUST** notify the Court. Failure to do so may result in the dismissal of the case. **Plaintiff must give notice of a new mailing address even if he remains incarcerated.** Plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice.

35

It is not enough to just put the new address on a letter without indicating that it is a new address. If plaintiff has more than one pending case, he should indicate all the case numbers in the notification of change of address. Plaintiff should also notify the defendants or the attorney for the defendants of his new address.

**Plaintiff shall utilize the Prisoner E-filing Program when filing documents with the Court.** Plaintiff is advised that the Program may be used only to file documents with the Court. The Local Rules provide that discovery materials are not filed with the court; therefore, discovery requests and responses must be served on defendants' counsel by regular mail.

It is so Ordered at Bridgeport, Connecticut, this 28th day of July 2022.

_____/s/_____
Hon. Sarah A. L. Merriam
United States District Judge