## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

```
------------------------------X
                              :
ALEXANDER ROSA                :    Civil No. 3:22CV00703(SALM)
                              :
v.                            :
                              :
ROLLIN COOK, et al.           :    December 5, 2022
                              :
------------------------------X
```

### <u>INITIAL REVIEW ORDER OF THE AMENDED COMPLAINT [Doc. #58]</u>

Self-represented plaintiff Alexander Rosa ("plaintiff") is a sentenced inmate in the custody of the Connecticut Department of Correction ("DOC"), currently housed at the Garner Correctional Institution ("Garner").[1] Plaintiff originally brought this action pursuant to 42 U.S.C. §1983 against ten defendants: Rollin Cook, former Commissioner of Correction; William Mulligan, former District Administrator; Warden Amonda Hannah; Captain/Correctional Officer Tolmie; Correctional

---

[1] The Court may take judicial notice of matters of public record. <u>See, e.g.</u>, <u>Mangiafico v. Blumenthal</u>, 471 F.3d 391, 398 (2d Cir. 2006); <u>United States v. Rivera</u>, 466 F. Supp. 3d 310, 313 (D. Conn. 2020) (taking judicial notice of BOP inmate location information); <u>Ligon v. Doherty</u>, 208 F. Supp. 2d 384, 386 (E.D.N.Y. 2002) (taking judicial notice of state prison website inmate location information). The Court takes judicial notice of the Connecticut DOC website, which reports that plaintiff is a sentenced inmate at Garner. <u>See</u> Connecticut State Department of Correction, <u>Inmate Information</u>, http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=381946 (last visited Dec. 1, 2022).

Officer ("C.O.") Vesera; C.O. Blekis; C.O. Pelliteri;
Captain/C.O. Hughes; Captain/C.O. Syed; and C.O. Mendez. See
Doc. #1 at 1, 2-3.

On July 28, 2022, the Court issued an Initial Review Order
("original IRO") of the original Complaint. See Doc. #35. The
original IRO permitted plaintiff to proceed to service on his
claims of excessive force in violation of the Eighth Amendment,
and state law assault and battery, against Captain Tolmie, in
his individual capacity, for damages. See id. at 31-32. The
original IRO dismissed all claims against the defendants in
their official capacities for damages, with prejudice. See id.
at 32. The original IRO also dismissed all First Amendment free
exercise claims against Warden Hannah, without prejudice to re-
filing in a separate, properly pleaded, lawsuit. See id. All
other substantive claims seeking monetary damages against
defendants in their individual capacities were dismissed,
without prejudice. See id. at 32-33.

The original IRO also dismissed plaintiff's: (1) request
for declaratory relief, with prejudice; (2) requests for
prospective injunctive relief against defendants in their
individual capacities, with prejudice; and (3) requests for
prospective injunctive relief against defendants in their
official capacities, without prejudice. See id. at 33.

2

The Court permitted plaintiff to respond to the original IRO in one of two ways. See id. Plaintiff could proceed immediately to service on Captain Tolmie, in his individual capacity, for damages, on the excessive force and assault and battery claims, or plaintiff could file an Amended Complaint. See id. at 33-34.

Plaintiff filed an Amended Complaint on September 21, 2022. See Doc. #58. The Amended Complaint names 23 defendants: Rollin Cook, "Former Commissioner" ("Cook"); William Mulligan, "Former District Administrator" ("Mulligan"); Amonda Hannah, "Former Warden" ("Warden Hannah"); Craig G. Burns, "Chief Mental Health Officer" ("Dr. Burns"); Dr. Patel; Nurse Ralph; Captain Tolmie; Captain Hughes; Captain F. Syed; C.O. Vescera; C.O. Blekis; C.O. Pelliteri; Lieutenant Deeb; Dr. Kathryn Carhart ("Dr. Carhart"); LCSW Lindsey Dickison ("Dickison"); C.O. Norton; C.O. Palmieri; C.O. Mendez; Nurse Stedman; C.O. John Doe 1; Lieutenant John Doe 2; Lieutenant John Doe 3; and Lieutenant John Doe 4. Id. at 2. Plaintiff brings claims against "[a]ll defendants ... in their individual capacities for money damages[.]" Id. at 1. Plaintiff also brings claims against "[a]ll defendants ... in their official capacities for injunctive relief[.]" Id.

Attached to the Amended Complaint are various Inmate Request Forms, Inmate Administrative Remedy Forms, and Inmate

Grievance Appeal Forms. See id. at 25-54.

## I.   **LEGAL STANDARD**

Pursuant to 28 U.S.C. §1915A, the Court must review "a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. §1915A(a). The Court is directed to dismiss any portion of the operative complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. See 28 U.S.C. §1915A(b). In a case such as this one, "[a] district court retains the authority — and indeed the duty — to sua sponte review the pleading sufficiency of [an] amended complaint." Praileau v. Fischer, 930 F. Supp. 2d 383, 389 (N.D.N.Y. 2013).

Although detailed allegations are not required, a complaint must include sufficient facts to afford a defendant fair notice of the claims and demonstrate a right to relief. See Bell Atlantic v. Twombly, 550 U.S. 544, 555-56 (2007). A plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Id. at 570. Conclusory allegations are not sufficient. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

It is well-established that complaints filed by self-represented litigants "'must be construed liberally and interpreted to raise the strongest arguments that they

4

suggest.'" <u>Sykes v. Bank of Am.</u>, 723 F.3d 399, 403 (2d Cir. 2013) (quoting <u>Triestman v. Fed. Bureau of Prisons</u>, 470 F.3d 471, 474 (2d Cir. 2006)); <u>see also</u> <u>Tracy v. Freshwater</u>, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for self-represented litigants). However, even self-represented parties must comply with Rule 8 and the other rules of pleading applicable in all federal cases. <u>See</u> <u>Harnage v. Lightner</u>, 916 F.3d 138, 141 (2d Cir. 2019); <u>see also</u> <u>Wynder v. McMahon</u>, 360 F.3d 73, 79 n.11 (2d Cir. 2004) ("[T]he basic requirements of Rule 8 apply to self-represented and counseled plaintiffs alike.").

## II.  **ALLEGATIONS OF THE AMENDED COMPLAINT**

The Court accepts the well-pleaded allegations of the Amended Complaint [Doc. #58] as true for purposes of this initial review.

On August 14, 2019, plaintiff "was transferred to Garner Correctional from MacDougall-Walker Correctional as a Level 5 mental health classification inmate[.]" Doc. #58 at 3. After his transfer, plaintiff's "mental health classification was changed to Level 4" which placed him in the "hotel unit" -- "the highest functioning unit for mental health inmates." <u>Id.</u>

On August 16, 2019, Doctor Alim Ramji at "U. Conn Hospital" ordered plaintiff "(1) to wear a sling[,] (2) to be cuffed in

front[,]" and to be provided "(3) pain reliever" for plaintiff's "broken collarbone[.]" Doc. #58 at 3.[2]

A.   <u>Allegations Related to Excessive Force</u>

On August 21, 2019, plaintiff "filed a PREA claim against MacDougall-Walker Correctional ... for an alleged improper strip search" and to challenge a departmental policy regarding strip searches. <u>Id.</u> On that same date, around 8:55 a.m., plaintiff "spoke to defendant Captain Tolmie about how [plaintiff] filed a PREA claim against MacDougall-Walker Correctional[.]" <u>Id.</u> at 3. Plaintiff also told Captain Tolmie that if plaintiff received a disciplinary offense, plaintiff could "beat the ticket due to non-existent wording in the disciplinary hearing process[.]" <u>Id.</u>

On August 21, 2019, at 9:00 a.m., plaintiff "allegedly committed an offense" and was instructed to enter his cell, which he did. <u>Id.</u> Plaintiff alleges: "I witnessed defendant Captain Tolmie speak with defendant Lindsey Dickison and upon information and belief defendant Captain Tolmie and Defendant Lindsey Dickison both conspired with each other about how I can beat a ticket and decided to escort me to I.P.M unit[.]" <u>Id.</u> at

---

[2] The Amended Complaint contains allegations related to forced medication and the denial of plaintiff's First Amendment right to free exercise of religion. The Court addresses those factual allegations within the context of the discussion below.

4 (sic).[3] Dickison told plaintiff that he would "have to go to"
the I.P.M. unit for "mental health purposes[]" because plaintiff
was "getting a class A offense" to which his mental health
condition had contributed. Doc. #58 at 4. Plaintiff "was upset
with the decision" to send him to the I.P.M. unit. Id. Plaintiff
"was not compliant" with verbal interventions from staff and he
refused "to go to I.P.M unit due to inhumane conditions." Id.
(sic).

    After "multiple verbal interventions[,]" Plaintiff "was
maliciously and sadistically sprayed on" the "genitals while"
using the toilet "without warning for the purpose of causing
pain and not for the purpose of restoring control." Id. at 4, 5.
While plaintiff attempted to wash the chemical agent from his
genitals, Captain Tolmie sprayed a "second burst onto"
plaintiff's "penis and face[,]" and then a "third burst" onto
plaintiff's "buttocks, testicles, arms, and back." Id. Plaintiff
alleges that Captain Tolmie "sprayed an approximately 6 to 8
times." Id. (sic). Plaintiff alleges: "Captain Tolmie retaliated
against me for filing a PREA claim against D.O.C. employees, and

---

[3] "I.P.M." is an initialism for the Inpatient Medical Unit. See
Doc. #1 at 4, ¶2.

that is why defendant Captain Tolmie sprayed the chemical agents onto my genitals to teach me a lesson." Id.[4]

Plaintiff's right arm was in a sling due to a broken collarbone. See Doc. #58 at 5. Plaintiff alleges: "Defendant Vescera and defendant Blekis maliciously and sadistically yanked my sling" which injured plaintiff's right shoulder and caused plaintiff "more pain" than he had been experiencing. Id. Plaintiff alleges that C.O. Vescera and C.O. Blekis "maliciously and sadistically cuffed my wrist so tight, it caused nerve damage and cut off the circulation of my wrist this caused permanent damage[.]" Id. at 6 (sic).

While he was being escorted to the I.P.M unit, plaintiff "was in extreme pain" from the chemical agent. Id. Plaintiff was taken "to the shower for about 2 to 4 seconds" to decontaminate, but he was not properly decontaminated. Id. (sic).

When plaintiff arrived at his cell in the I.P.M. unit, C.O. Vescera, C.O. Pelliteri, C.O. Blekis, C.O. Palmieri, and C.O. Mendez "violently stripped" plaintiff of his clothing. Id. These defendants also cuffed plaintiff behind his back, despite

---

[4] Plaintiff alleges: "Their was multiple verbal interventions I spoke with defendant(s) Nurse Stedman, Lindsey Dickison, Psych Doctor Kathryn Carhart, Lieutenant Deeb, Captain F. Syed, Captain Hughes, and Captain Tolmie all defendants stated in this paragraph were physically present and personally involved in this incident and could have prevented Captain Tolmie to use excessive force[.]" Doc. #58 at 4 (sic).

plaintiff having "a doctors order to be cuffed in front[.]" Id.
(sic). Plaintiff alleges that the cuffing caused him "lots of
pain" and "permanent injury" to his "collarbone and wrist[.]"
Id. at 6. Plaintiff alleges that "defendants Vescera, Pelliteri,
Blekis, Mendez, and Palmieri was fully aware of my doctors order
to be cuffed in front." Doc. #58 at 7 (sic).

Plaintiff "requested the camera operator defendant Norton
take pictures of" plaintiff's "injuries" "but the defendant
Norton ignored ... and disregarded the request[.]" Id.

B.    Allegations Related to Conditions of Confinement

While in the I.P.M. unit, the mattress in plaintiff's cell
was an "illegal size and depth mattress" and "was torn open on
the side and smelled like urine, body odor, feces, and mold."
Id. The blanket given to plaintiff "was also dirty" and "smelled
like it was soiled with urine." Id.

Plaintiff requested a new mattress and blanket from "I.P.M
Correctional Officer Defendant John Doe 1" who "said 'No.'" Id.
at 8 (sic). Plaintiff asked "Lieutenant John Doe 2 of 1st shift
for a shower to remove the chemical agents" but John Doe 2
refused the request. Id. (sic). Plaintiff asked Lieutenant John
Doe 2 for a replacement mattress and blanket, but John Doe 2
also refused that request. See id. Lieutenant John Doe 2 told
plaintiff to talk to Captain Syed, "who was the unit manager of

I.P.M." Id. Plaintiff next asked "Lieutenant John Doe 3 for hand soap" so that plaintiff could wash his "hands after bowel movements and urination" but John Doe 3 "refused[.]" Id. Plaintiff also asked Lieutenant John Doe 3 for "a replacement mattress and blanket and a pair of shoes" but John Doe 3 told plaintiff that he is allowed only one mattress and blanket, and pursuant to "protocol" inmates on "Q-15 status are not allowed a shower, no soap, no toothpaste & toothbrush, and no shoes and no socks[.]" Doc. #58 at 8-9 (sic).

On the night of August 21, 2019, plaintiff "was forced to go to sleep burning all over [his] body with soiled hands" and a soiled mattress and blanket. Id. at 9. Plaintiff alleges that he had "trouble sleeping for 20 days" while he was "in and out of" the I.P.M. unit. Id.

On August 22, 2019, plaintiff requested that Captain Syed provide various toiletries and a shower. Id. Captain Syed responded that "Level 5 mental health inmates who are on Q-15 status are not allowed" those items "per policy[.]" Id. Plaintiff alleges:

> I then requested a replacement mattress and blanket I complained about how the mattress was torn open on the side and had a ticket showing how old the mattress was which showed it was manufactured 2013 and that it smelled like urine, body odor, and feces and it had mold inside of the mattress and it was not the sure chek mattress it was a grey two inch mattress I also requested a new blanket he stated he will tell the officer to replace

10

```
the mattress but the I.P.M officers never exchanged it.
I requested to Defendant Lieutenant John Doe 4 for a
mattress he said "no"
```

Doc. #58 at 10 (sic).

C.   Allegations Related to Administrative Remedies

Plaintiff alleges that he filed the following "Level 1

Administrative Remedy" forms:

- September 19, 2019, related to the alleged use of

  excessive force, which was denied by Warden Hannah. See

  id. at 11.

- September 20, 2019, related to the deprivation of

  toiletries while on Q-15 status, to which plaintiff did

  not receive a response. See id. at 13.

- September 20, 2019, related to the alleged "forced

  medication administered by defendant Nurse Ralph[,]" to

  which plaintiff did not receive a response. Id. at 13.

- September 20, 2019, against defendants Katheryn Carhart,

  Lindsey Dickison, and Nurse Stedman "for failing to

  intervene [in] the assault and battery of 8/21/19[.]" Id.

  at 14. Plaintiff alleges that "this grievance was not

  responded or filed." Id. at 14 (sic).

- September 21, 2019, "against defendants Captain F. Syed,

  Captain Hughes, Lieutenant Deeb who also failed to

  intervene, prevent, or curb the amount of force being

11

utilized against me this grievance did not get filed or responded." <u>Id.</u> (sic).

- September 21, 2019, related to the condition of plaintiff's mattress and blanket, which was denied by Warden Hannah. <u>See</u> Doc. #58 at 11-12.

- Related to plaintiff's attempt to dry smudge in the I.P.M. unit, which was denied by Warden Hannah. <u>See</u> <u>id.</u> at 13.

Plaintiff

then filed 3 Level 2 Inmate Grievance Appeal to the defendant William Mulligan for (1) excessive force (2) illegal size and depth mattress that was soiled, molded, and old (3) exercising right to practice religion in I.P.M the defendant District Administrator William Mulligan denied all three grievances stating I have exhausted my remedies

<u>Id.</u> at 14 (sic).

D.   <u>"Claims for Relief"</u>

Plaintiff asserts seven "Claims for Relief":

(1)   As to "defendants Tolmie, Vescera, Blekis, Pelliteri, Mendez, Palmieri, Hughes, Deeb, and F. Syed in using excessive force against the plaintiff without need or in failing to intervene, curb, or prevent the misuse of force" which "constituted cruel and unusual punishment in violation of the Eighth Amendment[.]" <u>Id.</u> at 17-18.

12

(2) Assault and battery against defendants Tolmie,
    Vescera, Blekis, Pelliteri, Mendez, Palmieri, and
    Norton. See id. at 18.

(3) Failure to intervene in the use of excessive force
    against defendants Carhart, Dickison, and Stedman
    "constituted cruel and unusual punishment in violation
    of the Eighth Amendment[.]" Doc. #58 at 18.

(4) As to each of the four John Doe defendants, violation
    of "the Eighth Amendment" related to "a replacement
    mattress and blanket and etc." Id. (sic).

(5) As to defendants Nurse Ralph and Dr. Patel, "violation
    of the Eighth and Fourteenth Amendment" related to the
    "forced medication against the plaintiff and allowed
    the plaintiff to be housed in a degrading in a
    inhumane setting[.]" Id. (sic).

(6) As to defendants Hannah and Mulligan, "violations of
    the First, Eighth, and Fourteenth Amendments" for
    failure to "remedy the wrongs of the violations of"
    those amendments. Id.

(7) "The actions of defendants Rollin Cook and Craig G.
    Burns in placing policy that allows the Warden and
    District Administer to acknowledge the report but fail
    to remedy the wrongs as if this policy does not

violate inmates constitutional rights all supervising

officials are trained under the protocol, regulation,

and/or policy of the commissioner and chief mental

health officer." Doc. #58 at 18-19 (sic).

Plaintiff seeks various forms of injunctive and monetary

relief against all defendants. See generally id. at 19-22.

## III. <u>DISCUSSION</u>

The Amended Complaint asserts numerous claims against the

defendants. <u>See generally</u> Doc. #58. Generally, the allegations

of the Amended Complaint relate to two overarching issues: (1)

the alleged use of excessive force; and (2) the alleged

unconstitutional conditions of confinement while plaintiff was

held on Q-15 status in the I.P.M. unit.

### A.   <u>Claims against C.O. Norton</u>

The Amended Complaint alleges that "camera operator

defendant Norton" refused "to take pictures of" plaintiff's

injuries resulting from the alleged use of excessive force. Doc.

#58 at 7. Plaintiff alleges that C.O. Norton did not follow

"protocol[.]" <u>Id.</u> at 53. It is unclear what claim plaintiff

attempts to state against C.O. Norton. Regardless, "allegations

that a prison official violated the procedures set forth" in an

administrative or other policy "do not state a claim of a

violation of an inmate's constitutional rights." <u>Olivencia v.</u>

<u>Pun</u>, No. 3:21CV00739(KAD), 2021 WL 3173137, at *4 (D. Conn. July

14

27, 2021). Plaintiff does not allege any <u>other</u> way in which defendant Norton allegedly violated plaintiff's constitutional rights. Accordingly, the Amended Complaint fails to plead sufficient facts to state a claim against C.O. Norton. Accordingly, all claims against C.O. Norton are **DISMISSED, without prejudice.**

    B.   <u>Retaliation</u>

The Amended Complaint reasserts a claim for retaliation in violation of the First Amendment against Captain Tolmie. <u>See</u> Doc. #58 at 5. The original IRO dismissed this claim, without prejudice, because the original Complaint had "failed to plead sufficient facts to allege that the filing of the PREA claim 'was a substantial or motivating factor for the adverse actions taken by' Captain Tolmie." Doc. #35 at 16 (quoting <u>Bennett v. Goord</u>, 343 F.3d 133, 137 (2d Cir. 2003)). The law relevant to the retaliation claim is set forth at some length in the original IRO, and will not be repeated here. <u>See</u> Doc. #35 at 15-16.

The Court will permit the retaliation claim against Captain Tolmie to proceed for further development, based on plaintiff's claims of Captain Tolmie's knowledge of plaintiff's PREA complaint, and the temporal proximity between the alleged filing of the PREA complaint and the adverse action. <u>See</u> Doc. #58 at 3-

4; see also Washington v. Afify, 681 F. App'x 43, 46 (2d Cir.
2017) ("Although ... temporal proximity between protected
conduct and an adverse action constitutes circumstantial
evidence of retaliation," the Second Circuit has "consistently
required some further evidence of retaliatory animus before
permitting a prisoner to proceed to trial on a retaliation
claim.").

The Amended Complaint alleges that Captain Tolmie and
Dickison "conspired with each other about how I can beat a
ticket and decided to escort me to I.P.M unit[.]" Doc. #58 at 4
(sic). Construing the Amended Complaint liberally, plaintiff
seems to allege that Dickison conspired with Captain Tolmie to
place plaintiff in the I.P.M. unit. See Doc. #58 at 4. To the
extent plaintiff attempts to assert a claim for conspiracy, the
Amended Complaint fails to state a claim "because [it] contains
no specific allegations which, if true, would support
[plaintiff's] theory that a conspiracy existed." Pugach v.
Ventrella, 152 F.3d 920 (2d Cir. 1998). Accordingly, all claims
for conspiracy against Captain Tolmie and Dickison are
**DISMISSED, without prejudice**. See Jean-Laurent v. Wilkinson, 540
F. Supp. 2d 501, 508 (S.D.N.Y. 2008) ("Complaints containing
only conclusory, vague, or general allegations that the
defendants have engaged in a conspiracy to deprive the plaintiff

16

of his constitutional rights are properly dismissed." (citation and quotation marks omitted)), aff'd sub nom. Jean-Laurent v. Wilkerson, 461 F. App'x 18 (2d Cir. 2012).

To the extent that plaintiff attempts to assert a retaliation claim against Dickison, plaintiff has failed to plead sufficient facts to support a claim that Dickison retaliated against plaintiff for any protected speech or conduct. See Shand v. Rodriguez, No. 3:20CV01268(SVN), 2021 WL 5988629, at *6 (D. Conn. Dec. 17, 2021) ("Protected speech or activity includes filing a lawsuit, an administrative complaint, or a prison grievance." (citation and quotation marks omitted)). Rather, the Amended Complaint merely alleges that Dickison knew plaintiff could "beat a ticket[.]" Doc. #58 at 4. This is insufficient to support a claim for retaliation, which the Court must approach "with skepticism and care[.]" Dolan v. Connolly, 794 F.3d 290, 295 (2d Cir. 2015). Accordingly, all claims for retaliation against Dickison are **DISMISSED, without prejudice.**

C.   Eighth Amendment Excessive Force

The Amended Complaint attempts to reassert three claims for the use of excessive force relating to the: (1) deployment of a chemical agent; (2) tight handcuffing; and (3) strip search. The law relevant to the Eighth Amendment excessive force claim is set forth at some length in the original IRO, and will not be repeated here. See Doc. #35 at 20-21.

17

### 1. Chemical Agent

The Court previously permitted the claim for excessive force related to the deployment of a chemical agent to proceed for further development against Captain Tolmie in his individual capacity for damages. See Doc. #35 at 21-22, 31-32. The Amended Complaint reasserts that claim, and the Court will again permit it to proceed for further development against Captain Tolmie in his individual capacity for damages.

The Amended Complaint also alleges that defendants Nurse Stedman, Dickison, Dr. Carhart, Lieutenant Deeb, Captain Syed, and Captain Hughes "were physically present and personally involved in this incident and could have prevented Captain Tolmie" from using excessive force. Doc. #58 at 4.

"It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." Anderson v. Branen, 17 F.3d 552, 557 (2d Cir. 1994); see also El-Massri v. New Haven Corr. Ctr., No. 3:18CV01249(CSH), 2018 WL 4604308, at *6 (D. Conn. Sept. 25, 2018) ("An official may ... be liable for failing to intercede where he or she observes excessive force is being used or has reason to know that it will be." (citation and quotation marks omitted)). Liability for failure to intervene "may attach only when (1) the officer had a realistic

18

opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene." Jean-Laurent, 540 F. Supp. 2d at 512.

For purposes of initial review, the allegations of the Amended Complaint are sufficient to state a claim for failure to intervene against Nurse Stedman, Dickison, Dr. Carhart, Lieutenant Deeb, Captain Syed, and Captain Hughes, each of whom was allegedly present when Captain Tolmie deployed the chemical agent numerous times, and each of whom did nothing to intervene. Accordingly, the Court will permit this claim to proceed for further development against defendants Nurse Stedman, Dickison, Dr. Carhart, Lieutenant Deeb, Captain Syed, and Captain Hughes, in their individual capacities for damages.

### 2. Handcuffs

The Amended Complaint reasserts claims for excessive force based on tight handcuffing. See Doc. #58 at 5-7. The original IRO dismissed these claims, without prejudice, for failure to state a claim. See Doc. #35 at 22-24. As stated in the original IRO:

> "There is consensus among courts in this circuit that tight handcuffing does not constitute excessive force unless it causes some injury beyond temporary discomfort." Shehan v. Erfe, No. 3:15CV01315(MPS), 2017 WL 53691, at *10 (D. Conn. Jan. 4, 2017) (citation and

quotation marks omitted). "[T]o sufficiently plead an excessive force claim based upon tight handcuffing, the plaintiff must allege more than a temporary injury." Burroughs v. Mitchell, 325 F. Supp. 3d 249, 270 (N.D.N.Y. 2018).

Id. at 22-23.

The Amended Complaint alleges: "Defendants Vescera and Blekis maliciously and sadistically cuffed my wrist so tight, it caused nerve damage and cut off the circulation of my wrist this caused permanent damage[.]" Doc. #58 at 6 (sic). Based on these allegations, and for purposes of initial review only, the Court will permit the excessive force claim related to tight handcuffing to proceed for further development against C.O. Vescera and C.O. Blekis, in their individual capacities for damages.

The Amended Complaint alleges that during the above-described cuffing, C.O. Vescera and C.O. Blekis "maliciously and sadistically yanked" plaintiff's sling, injuring plaintiff's right shoulder and causing him pain. Doc. #58 at 5. These conclusory allegations do not cure the deficiencies identified in the original IRO. See Doc. #35 at 23-24. Accordingly, the excessive force claim against C.O. Vescera and C.O. Blekis related to the alleged "yank" on plaintiff's sling is **DISMISSED, without prejudice.**

The original Complaint alleged: "Defendants Vesera, Pelliteri, Blekis, Mendez, Palmieri, put my wrist all the way in the back towards the back of my neck of which I have a doctors order to be cuffed in the front this cause lots of pain." Doc. #1 at 5, ¶9 (sic). The original IRO dismissed the claims relating to these allegations without prejudice because the original Complaint did "not allege facts from which it could be inferred that Vesera, Pelliteri, Blekis, or Mendez subjected plaintiff to excessive force, and did so maliciously and sadistically. Nor are there any allegations that any defendant was aware of the doctor's front cuffing order." Doc. #35 at 24 (sic) (citation and quotation marks omitted).

The Amended Complaint now alleges that while conducting the strip search described below, defendants C.O. Vescera, C.O. Pelliteri, C.O. Palmieri, C.O. Blekis, and C.O. Mendez "placed my wrist in the back of me bending my arms awkwardly to the back of my neck" despite plaintiff having "a doctors order to be cuffed in front this cause lots of pain" and "permanent injury to my collarbone and wrist." Doc. #58 at 6 (sic). The Amended Complaint also now alleges that "defendants Vescera, Pelliteri, Blekis, Mendez, and Palmieri was fully aware of my doctors order to be cuffed in front." Id. at 7 (sic).

21

"Merely handcuffing a suspect and requiring h[im] to place h[is] hands behind h[is] back is not a constitutional violation." <u>Lloyd v. City of New York</u>, 246 F. Supp. 3d 704, 724 (S.D.N.Y. 2017). Here, however, the Amended Complaint alleges that each of these defendants was aware of the doctor's order to handcuff plaintiff in the front, and that plaintiff suffered permanent injury to his collarbone and wrist because of the handcuffing. For initial review purposes only, the Court will permit the Eighth Amendment claim related to the handcuffing to proceed for further development against C.O. Vescera, C.O. Pelliteri, C.O. Blekis, C.O. Mendez, and C.O. Palmieri in their individual capacities for damages.

     3.   *Strip Search*

The original Complaint alleged that upon reaching the I.P.M. unit, "defendants Vesera, Pelliteri, Blekis, Palmieri, Mendez violently stripped" plaintiff of his clothing and plaintiff felt as though he "was being raped and violated." Doc. #1 at 5, ¶8 (sic). The original IRO dismissed, without prejudice, all Eighth Amendment claims related to the strip search for failure to state a claim. <u>See</u> Doc. #35 at 24-25. The Amended Complaint now alleges: "Defendants Vescera, Pelliteri, Blekis, Palmieri, Mendez maliciously and sadistically and violently stripped me of my clothing it felt as if I was being

raped and violated while they had physically had their hands on my body[.]" Doc. #58 at 6 (sic).

These allegations, like those in the original Complaint, fail to support an Eighth Amendment violation arising from the strip search. The allegations of the Amended Complaint again establish that the strip search was "incidental to legitimate official duties[,]" and was not undertaken "to arouse, or gratify the officer or humiliate the inmate." Green v. Martin, 224 F. Supp. 3d 154, 168 (D. Conn. 2016). Indeed, an attachment to the Amended Complaint signed by Captain Syed states: "Control strip searches in IPM1 IPM2 RHU is the standard at Garner C.I." Doc. #58 at 25 (sic). Accordingly, all Eighth Amendment claims related to the strip search are **DISMISSED, without prejudice.**

D. Eighth Amendment Conditions of Confinement –
   Unsanitary Blanket and Mattress

The original Complaint attempted to assert a claim for unconstitutional conditions of confinement with respect to the condition of plaintiff's mattress and blanket while he was held in the I.P.M. unit. See generally Doc. #1 at 6, ¶¶12-13. The original IRO dismissed that claim, without prejudice, because: (1) the allegations of the original Complaint failed to implicate any named defendant; and (2) there were no allegations satisfying the subjective element of this claim. See generally Doc. #35 at 17-20. The Amended Complaint attempts to reassert

this claim against four John Doe defendants and Captain Syed.
See generally Doc. #58 at 8-10. The law relevant to the Eighth
Amendment conditions of confinement claim is set forth at some
length in the original IRO, and will not be repeated here. See
Doc. #35 at 18-20.

The Amended Complaint alleges that plaintiff was held in
the I.P.M. unit for approximately twenty days, during which time
he had "trouble sleeping[.]" Doc. #58 at 9; see also id. at 10.
For initial review purposes, the Court will assume, without
deciding, that plaintiff has alleged facts sufficient to support
the objective element of this claim related to the deprivation
of sanitary mattress and blanket. See Doc. #35 at 19.

As to the subjective prong, however, "plaintiff must show
that the defendant acted with more than mere negligence. To
constitute deliberate indifference, the prison official must
know of, and disregard, an excessive risk to inmate health or
safety." Walker v. Schult, 717 F.3d 119, 125 (2d Cir. 2013)
(citation and quotation marks omitted). Plaintiff alleges that
he requested a new blanket and mattress from each of the John
Doe defendants during the first two days of his confinement in
I.P.M. See generally Doc. #58 at 8-10. Based on the very short
time period that plaintiff was exposed to the alleged unsanitary
mattress and blanket when he asked these specific defendants for

24

replacements, the Amended Complaint fails to allege that the John Doe defendants knew of, and disregarded, an excessive risk to plaintiff's health or safety. Similarly, plaintiff alleges that he spoke to Captain Syed about the condition of his mattress and blanket, and Captain Syed stated that "he will tell the officer to replace the mattress[.]" Id. at 10. Although the replacement mattress did not arrive as stated, the allegations of the Amended Complaint are that Captain Syed took steps to remedy the situation, rather than disregarding it. At most, Captain Syed could be said to have negligently failed to follow up on plaintiff's request. Accordingly, plaintiff's Eighth Amendment conditions of confinement claim related to the conditions of his mattress and blanket while he was housed in the I.P.M. unit is **DISMISSED, without prejudice,** as to the John Doe defendants and Captain Syed.

E.   Eighth Amendment Conditions of Confinement –
Deprivation of Toiletries

The Amended Complaint alleges that plaintiff was deprived of various toiletries (hand soap, toothbrush, and toothpaste) while held in the I.P.M. unit. See Doc. #58 at 8-10. Plaintiff alleges that he requested these items from John Doe 3 and from Captain Syed, each of whom declined the request. See id. at 8-9. Plaintiff alleges that John Doe 3 stated that while on Q-15 status, an inmate is "not allowed" to have soap, toothpaste, or

25

a toothbrush. Id. at 9. Captain Syed also told plaintiff that
"Level 5 mental health inmates who are on Q-15 status are not
allowed handsoap, toothbrush & toothpaste, socks and shoes, nor
a shower per policy[.]" Id. (sic). The law relevant to the
Eighth Amendment conditions of confinement claim is set forth at
some length in the original IRO, and will not be repeated here.
See Doc. #35 at 18.

The Second Circuit has "recognized that deprivation of
toiletries, and especially toilet paper, can rise to the level
of unconstitutional conditions of confinement[.]" Trammell v.
Keane, 338 F.3d 155, 165 (2d Cir. 2003). The allegations of the
Amended Complaint, however, do not rise to such a level.

> Deprivation of other toiletries [not toilet paper] for
> approximately two weeks — while perhaps uncomfortable —
> does not pose such an obvious risk to an inmate's health
> or safety to suggest that the defendants were aware of
> facts from which the inference could be drawn that a
> substantial risk of serious harm existed, and that they
> also drew the inference.

Id. (citation and quotation marks omitted). The allegations of
the Amended Complaint in fact suggest that John Doe 3 and
Captain Syed were acting according to policy and did not have
the authority to provide plaintiff with the toiletries as
requested. There is no indication that either John Doe 3 or
Captain Syed disregarded an "obvious risk" to plaintiff's health
from the denial of soap, toothpaste, and a toothbrush.

Accordingly, plaintiff's Eighth Amendment conditions of
confinement claim related to the deprivation of toiletries while
he was housed in the I.P.M. unit is **DISMISSED, without
prejudice.**

F.   Eighth Amendment Conditions of Confinement – Denial of
     Shower

Construing the Amended Complaint liberally, plaintiff
appears to assert a claim related to the alleged failure to
properly decontaminate him after the deployment of the chemical
agent. See Doc. #58 at 6-7. The Amended Complaint alleges that
although plaintiff "was escorted to the shower for about 2 to 4
seconds" to decontaminate, plaintiff was not properly
decontaminated because his clothes remained on. Id. at 6 (sic).
The Amended Complaint alleges that plaintiff asked John Doe 2
for permission to properly decontaminate, but John Doe 2 refused
the request. See id. at 8. Plaintiff also asked John Doe 3 for
permission to shower, but John Doe 3 stated that while on Q-15
status, an inmate is "not allowed" to shower. Id. at 9. The
Amended Complaint alleges that on August 21, 2019, plaintiff
"was forced to go to sleep burning all over my body[.]" Id. The
next day, on August 22, 2019, plaintiff asked Captain Syed for
permission to shower; Captain Syed also told plaintiff that
"Level 5 mental health inmates who are on Q-15 status are not
allowed ... a shower per policy[.]" Id.

27

The Amended Complaint fails to state a claim for unconstitutional conditions of confinement related to the denial of a shower. The Amended Complaint does not adequately allege the subjective component of the claim. First, there are no allegations that plaintiff requested permission to shower from John Doe 3 or Captain Syed for decontamination purposes, or that plaintiff informed either defendant that he was in pain from prolonged exposure to the chemical agent.

Second, although plaintiff requested permission to shower from John Doe 2 for decontamination purposes, there are no allegations that John Doe 2 was aware that the prior effort to decontaminate plaintiff was unsuccessful or that plaintiff was in pain from continued exposure to the chemical agent. On the facts alleged, there is no indication that John Doe 2, John Doe 3, or Captain Syed knew of, and disregarded, an excessive risk to plaintiff's health or safety. See Walker, 717 F.3d at 125; see also Deegan v. Doe #1, No. 3:19CV01356(MPS), 2019 WL 5964816, at *5 (D. Conn. Nov. 13, 2019) ("The plaintiff alleges that he suffered pain due to the inadequate attempts to decontaminate him. There are no allegations that the plaintiff made Lieutenant #3 aware that the other employees' attempts were inadequate or informed Lieutenant #3 that he continued to suffer from pain as a result of the chemical agent. Thus, as alleged,

28

the facts do not state a claim that after the initial attempt to decontaminate the plaintiff, Lieutenant #3 was aware of and disregarded a substantial risk of harm to his health.").

Accordingly, all Eighth Amendment claims against John Doe 2, John Doe 3, and Captain Syed related to the denial of a shower are **DISMISSED, without prejudice.**

G.   <u>Forced Medication</u>

Sometime during the above-referenced events, Nurse Ralph, at the direction of Dr. Patel, allegedly "forced" plaintiff "to take medication" by means of "3 intra-muscular shots Thorazine, Benadryl, and Haldol" without a "panel hearing" and "possibly for disciplinary purposes[.]" Doc. #58 at 7 (sic).

Inmates have "a significant liberty interest in avoiding the unwanted administration of antipsychotic drugs under the Due Process Clause of the Fourteenth Amendment." <u>Washington v. Harper</u>, 494 U.S. 210, 221-22 (1990). "That right, however, is not absolute. The Due Process Clause permits the State to treat a prison inmate who has a serious mental illness with antipsychotic drugs against his will, if the inmate is dangerous to himself or others and the treatment is in the inmate's medical interest." <u>Riddick v. Chevalier</u>, No. 3:11CV01555(SRU), 2013 WL 4823153, at *3 (D. Conn. Sept. 9, 2013). "Courts applying <u>Harper</u> in the context of a single administration of

antipsychotic medication in response to an emergency situation have relied on the opinion of the doctor administering the medication. ... Several district courts also have held that isolated emergency administration of antipsychotic medication without a hearing does not violate due process." Id.

The allegations of the Amended Complaint indicate that the administration of these medications was an "isolated emergency administration" in response to plaintiff presenting a danger to himself and/or correctional facility staff. Id. The Amended Complaint alleges that plaintiff was transferred to Garner "as a level 5 mental health classification inmate due to mental health purposes." Doc. #58 at 3. Plaintiff was "upset" with the decision to place him in the I.P.M. unit. Id. at 3, 4. Plaintiff concedes that he "was not compliant and refuse[d] to go" to the I.P.M. unit, and that there were "multiple verbal interventions" before Captain Tolmie deployed the chemical agent. Id. at 4. Plaintiff explained on an Inmate Request Form that he was in the I.P.M. for "acting 'unsafe'[.]" Id. at 25; see also id. at 43 ("Inmates are not arbitrarily placed on Mental Health Observation Status; this is done for the inmate's safety whom has demonstrated a threat to their own wellbeing." (sic)).

Based on the allegations of the Amended Complaint, Dr. Patel's decision "to administer a single dose of antipsychotic

medication was an appropriate response to an emergency situation where [plaintiff] was a danger to himself[]" or to others. Riddick, 2013 WL 4823153, at *3; see also Batts v. Boganoff, No. 3:04CV01191(MRK)(WIG), 2005 WL 3543774, at *6 (D. Conn. Dec. 8, 2005) ("An inmate's interests are adequately protected, and perhaps better served, by allowing the decision to medicate to be made by medical professionals rather than a judge." (citation and quotation marks omitted)).

Accordingly, plaintiff has failed to state claim for a violation of his Fourteenth Amendment rights based on the forced administration of anti-psychotic medication. Therefore, this claim is **DISMISSED, without prejudice**.[5]

H.   Assault and Battery

"To establish a claim for assault and battery, plaintiff must prove that defendants applied force or violence to h[im] and that the application of force or violence was unlawful." Williams v. Lopes, 64 F. Supp. 2d 37, 47 (D. Conn. 1999). At this stage, and based on the excessive force claims permitted to go forward, the Court will permit the assault and battery claim to proceed against Captain Tolmie, C.O. Vescera, C.O. Pelliteri,

---

[5] Plaintiff alleges that he was forcibly medicated "possibly for disciplinary purposes[.]" Doc. #58 at 7. This conclusory and speculative allegation is insufficient to state a claim for a constitutional violation as to Nurse Ralph or Dr. Patel.

31

C.O. Blekis, C.O. Palmieri, and C.O. Mendez for further development of the record. See Outlaw v. City of Hartford, No. 3:07CV01769(GWC), 2015 WL 13646918, at *1 (D. Conn. May 5, 2015) ("The essential elements of a Fourth Amendment excessive-force claim and a state-law assault-and-battery claim are substantially identical.") (citations and quotation marks omitted)).

The Court will also permit this claim to proceed against Nurse Ralph related to the alleged forcible medication. See Washington v. Glucksberg, 521 U.S. 702, 725 (1997) (acknowledging the "common-law rule that forced medication was a battery"); Doe v. Town of W. Hartford, No. HHD-X-04-CV-106012130-S, 2012 WL 1292589, at *4 (Conn. Super. Ct. Mar. 21, 2012) (allegations of forced medication stated claim for assault and battery under Connecticut law).

To the extent plaintiff attempts to assert any state law claims for assault and battery against the other named defendants, those claims are **DISMISSED, without prejudice.**

I.   Free Exercise Claim

The original IRO construed the original Complaint as attempting to assert a First Amendment free exercise claim. See Doc. #35 at 8. The original IRO dismissed this claim, without prejudice to filing in a separate, properly pleaded lawsuit,

32

because it was misjoined with plaintiff's Eighth Amendment claims. See id. at 9-11.

The original Complaint did "not contend that the denial of [plaintiff's] ability to engage in ... religious activity occurred while he was subject to the conditions of confinement complained of in the I.P.M." Id. at 10. The Amended Complaint, however, now alleges that plaintiff asked Captain Syed and Captain Hughes if he could dry smudge in the I.P.M. unit but "they both said 'No' and stated" plaintiff could "not practice" his "particular religion" in the I.P.M. unit. Doc. #58 at 10 (sic). Plaintiff alleges that he filed an administrative remedy form directed to this deprivation, which Warden Hannah denied "stating mental health 5 inmates are unable to access religious artifacts in I.P.M[.]" Id. at 13 (sic). Because the allegations of the Amended Complaint appear to cure the previously identified misjoinder, the Court considers whether the Amended Complaint alleges sufficient facts to state a First Amendment free exercise claim.

> Prisoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause. Balanced against the constitutional protections afforded prison inmates, including the right to free exercise of religion, however, are the interests of prison officials charged with complex duties arising from administration of the penal system.

Ford v. McGinnis, 352 F.3d 582, 588 (2d Cir. 2003) (citations and quotation marks omitted). "Under the First Amendment, a prison policy that burdens the free exercise of religion passes constitutional muster if it is reasonably related to legitimate penological interests." Kole v. Lappin, 551 F. Supp. 2d 149, 154 (D. Conn. 2008) (citation and quotation marks omitted). "To prevail on a First Amendment claim, a plaintiff must show that he has a sincerely held religious belief, that it was substantially burdened, and that defendants' conduct was not reasonably related to some legitimate penological interest." Barnes v. Furman, 629 F. App'x 52, 55 (2d Cir. 2015).[6]

The Court first considers "whether the practice asserted is religious in the person's scheme of beliefs, and whether the belief is sincerely held[.]" Farid v. Smith, 850 F.2d 917, 926 (2d Cir. 1988). "Our scrutiny extends only to whether a claimant sincerely holds a particular belief and whether

---

[6] It is unclear whether the "substantial burden" element remains viable. See Holland v. Goord, 758 F.3d 215, 220 (2d Cir. 2014) ("It has not been decided in this Circuit whether, to state a claim under the First Amendment's Free Exercise Clause, a prisoner must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs." (citation and quotation marks omitted)); see also Brandon v. Kinter, 938 F.3d 21, 32 n.7 (2d Cir. 2019) ("Our Circuit has not yet decided whether the substantial burden requirement remains good law after the Supreme Court's decision in Employment Division v. Smith, 494 U.S. 872, 887 (1990)."). The Court does not reach this issue because plaintiff has not alleged any facts establishing his religious beliefs.

the belief is religious in nature." <u>Jolly v. Coughlin</u>, 76 F.3d 468, 476 (2d Cir. 1996).

The Amended Complaint contains no allegations concerning what religion plaintiff was attempting to practice, whether his religious beliefs are sincerely held, or why the actions of defendants burdened his religious exercise. Plaintiff merely alleges that he requested to "dry smudge" while in the I.P.M. unit, and his request was denied. Doc. #58 at 10. Based on these bare facts, plaintiff has failed to state a First Amendment free exercise claim. Accordingly, this claim is **DISMISSED, without prejudice**, as to Captain Syed and Captain Hughes.

J.   <u>Supervisory Defendants and Policies</u>

The original IRO dismissed all individual capacity claims against defendants Warden Hannah, Mulligan, and Cook, for failure to adequately allege their personal involvement in the alleged Eighth Amendment violations. <u>See</u> Doc. #35 at 11-15. The law relevant to personal involvement is set forth at some length in the original IRO, and will not be repeated here. <u>See</u> <u>id.</u> at 11-12.

1.   <em>Warden Hannah and Mulligan</em>

The Amended Complaint again alleges that Warden Hannah denied several of plaintiff's grievances related to the events described in the Amended Complaint. <u>See</u> Doc. #58 at 11-14.

Similarly, the Amended Complaint again alleges that Mulligan denied plaintiff's administrative appeals related to: (1) the use of excessive force; (2) the condition of plaintiff's mattress and blanket while in the I.P.M. unit; and (3) the denial of plaintiff's request to dry smudge while in the I.P.M. unit. See id. at 14. As explained in the original IRO, such allegations are generally insufficient to allege personal involvement for purposes of a section 1983 claim. See Doc. #35 at 13-14.

The Amended Complaint now alleges that Warden Hannah and Mulligan "failed to remedy the wrong" as to: (1) the use of excessive force; (2) the condition of his mattress and blanket while in the I.P.M. unit; and (3) the denial of plaintiff's request to dry smudge while in the I.P.M. unit. Id. at 11-13; see also id. at 14-15 (Mulligan "failed to remedy the wrong as this facility still utilize inappropiate excessive force of chemical agents against mentally ill inmates this facility still has illegal size and depth mattress that are old, molded, and soiled and this facility still does not allow a I.P.M inmate to practice religion." (sic)).

"A supervisory official who reviews a grievance is personally involved in an ongoing constitutional violation if he is confronted with a situation that he can remedy directly."

36

Gawlik v. Quiros, No. 3:21CV01549(SALM), 2022 WL 2065042, at *8
(D. Conn. June 8, 2022) (citations and quotation marks omitted).
The Amended Complaint fails to state a claim against Warden
Hannah and Mulligan because there are no allegations that either
defendant participated in the alleged constitutional violations,
or that the alleged constitutional violations were ongoing as to
plaintiff specifically. See Burton v. Lynch, 664 F. Supp. 2d
349, 360 (S.D.N.Y. 2009) ("[A]n alleged constitutional violation
complained of in a grievance must be ongoing in order to find
personal involvement, such that the supervisory official who
reviews the grievance can remedy it directly." (citation and
quotation marks omitted)). Rather, plaintiff alleges generally
that there were ongoing, systemic issues in the facility, that
were not affecting him directly at the time he wrote the
grievances. Indeed, plaintiff submitted his grievances and
appeals related to these issues after he was released from the
I.P.M. unit. See, e.g., Doc. #58 at 27, 40, 43, 47, 51
(grievances and appeals submitted by plaintiff regarding the
alleged constitutional violations that occurred while plaintiff
was held in I.P.M., all of which are dated after his release
from I.P.M.). Thus, the violations plaintiff complained of
regarding the I.P.M. conditions were no longer ongoing as to

37

plaintiff specifically when he complained to Warden Hannah and Mulligan.

Accordingly, all claims asserted against Warden Hannah and Mulligan in their individual capacities for monetary damages are **DISMISSED**, for lack of personal involvement. See Muniz v. Cook, No. 3:20CV01533(MPS), 2021 WL 5919818, at *6 (D. Conn. Dec. 15, 2021) (collecting cases).[7]

### 2.   Former Commissioner Cook and Dr. Burns

The Amended Complaint attempts to personally implicate Former Commissioner Cook and Dr. Burns in the alleged constitutional violations based on their purported involvement in enacting certain protocols or policies. See Doc. #58 at 15-16. The allegations of the Amended Complaint reiterate the allegations of the original Complaint, albeit in a more sophisticated manner: Former Commissioner Cook – and, now, Dr. Burns as well -- should be held liable merely because of their supervisory roles. This fails for several reasons.

First, the Amended Complaint repeatedly alleges the existence of the policies "upon information and belief." Id. at

---

[7] The Amended Complaint alleges, "[u]pon information and belief[,]" that "there is a discriminatory practice" that does not allow an inmate to press charges against a correctional officer for assault, but does allow a correctional officer to press charges against an inmate for assault. Doc. #58 at 12. The Court does not construe these allegations as asserting any cognizable civil claim.

58. This is not a magic phrase that can transform pure speculation into actionable fact. For example, the Amended Complaint alleges: "Upon information and belief defendants Rollin Cook and Craig G. Burns made protocol to allow lieutenants and captains to use inappropriate use of chemical agents against an inmate until he submit to restraints" and to "use inappropriate use of chemical agents and physical force against a mentally ill inmate who is unaware of his actions while mentally incapacitated." Id. at 15 (sic). These allegations are in direct conflict with Administrative Directive 6.5, which sets "forth the circumstances under which correctional staff are authorized to use physical and/or deadly force in the performance of their duties."[8] Additionally, it bears noting that this Administrative Directive was promulgated before Cook was sworn into office as Commissioner of the D.O.C. on January 1, 2019. Accordingly, the Amended Complaint fails to state a claim against either Cook or Dr. Burns related to the deployment of the chemical agent.

---

[8] State of Connecticut Department of Correction, Administrative Directive 6.5, (Oct. 10, 2018) https://portal.ct.gov/-/media/DOC/Pdf/Ad/AD06/AD0605.pdf. "The Court can take judicial notice of the State of Connecticut Administrative Directives on the Department of Correction's website." Chambers v. Johnpierre, No. 3:14CV01802(VAB), 2016 WL 5745083, at *3 n.4 (D. Conn. Sept. 30, 2016).

The Amended Complaint also alleges that Cook permitted Warden Hannah and Mulligan "to allow Garner Correctional to have old mattresses" and Dr. Burns permitted "only one blanket to cover the body and no blanket to cover the mattress[.]" Doc. #58 at 15. Plaintiff alleges that Cook and Dr. Burns "were personally involved by in placing policy to **allow** the warden and district administrator to deny the grievance as if it is protocol." Id. (sic) (emphasis added); see also id. at 15-16. By alleging that these defendants "allow[ed]" Warden Hannah and Mulligan to take certain actions, plaintiff seeks to hold Cook and Dr. Burns liable simply because they are supervisory officials, which is insufficient to give rise to a section 1983 claim. See Smart v. Annucci, No. 19CV07908(CS), 2021 WL 260105, at *5 (S.D.N.Y. Jan. 26, 2021) ("Merely being in the chain of command is not enough to satisfy [the personal involvement] standard. ... Failing to correct another officer's violation does not suffice." (citations omitted)). In sum, the Amended Complaint's conclusory allegations fail to establish that Cook or Dr. Burns "promulgated an unconstitutional policy with a culpable mental state" in regard to the alleged insufficient mattress and blanket. Stone #1 v. Annucci, No. 20CV01326(RA), 2021 WL 4463033, at *8 (S.D.N.Y. Sept. 28, 2021).

The Amended Complaint next alleges:

40

> Upon information and belief defendants Rollin Cook and
> Craig G. Burns to allow Warden Amonda Hannah and District
> Administrator William Mulligan to systematically deny
> grievances and trained them to refuse to remedy the wrong
> on a inmate rights to practice religion and has been
> personally involved by in placing policy to deny the
> inmates rights to practice religion in I.P.M[.]

Doc. #58 at 15-16 (sic). For reasons previously stated, these

conclusory allegations fail to establish that Cook or Dr. Burns,

through their "own individual actions," have "violated the

Constitution." Iqbal, 556 U.S. at 676. "Plaintiff has not

alleged facts indicating that" either Cook or Dr. Burns

"created, or allowed the continuance of a policy, while

conscious that such policy posed a substantial risk of serious

harm to Plaintiff." Sosa v. Richeson, No. 3:21CV00927(VLB), 2022

WL 462410, at *10 (D. Conn. Feb. 15, 2022).

Accordingly, all claims asserted against Cook and Dr. Burns

in their individual capacities for monetary damages are

**DISMISSED, without prejudice**, for lack of personal involvement

and for failure to state a claim.

K.  Requests for Injunctive Relief

Plaintiff requests that the Court issue the following

injunctive relief against defendants in their official

capacities:

1. This Complaint and lawsuit not only affects the
   plaintiff but the entire mental health population, to
   allow injunctive relief for the entire mental health
   population.

41

2. To reprimand and suspend Tolmie, Vescera, Pelliteri, Blekis, Mendez, and Palmieri, and Norton for 7 to 14 days without pay[.]

3. To provide the mental health population and entire facility new mattresses for Garner Correctional new mattresses that is in accordance of law[.]

4. To allow I.P.M Q-15 status to take showers, to access liquid soap, to be monitored to use a toothbrush, and to give them shoes as this affects the entire mental health population who will get on Q-15 status in I.P.M unit the future and presently[.]

5. To allow I.P.M inmates to practice their religion whether Muslim, Native American, or whatever religion as they should possess a praying rug or some type of religious artifact as this affects the entire mental health population who will get on Q-15 status in I.P.M unit in the future, and presently[.]

6. To limit the amount of force against a mental health inmate as some or all inmates may be mentally incapacitated or have abnormal thinking, limiting the amount of chemical agents or physical force to a submissive inmate who is unaware of his actions or possibly change policy for the use of chemical agents being used on a mental health inmate.

7. To do a panel hearing on all mentally ill inmates before forcing medication[.]

8. To allow inmates to press criminal charges against an officer or staff for assault & battery as this affects the entire population for incarcerated individuals.

9. To allow inmates to shower to remove chemical agents from their body as this affects the entire population for incarcerated individuals.

Doc. #58 at 19-20 (sic).

Plaintiff brings the Amended Complaint only on his own behalf. "Prospective relief in any civil action with respect to

42

prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular **plaintiff or plaintiffs**." 18 U.S.C. §3626(a)(1)(A) (emphases added). "The PLRA provides that the Court shall not grant any prospective relief unless it finds that 'such relief is narrowly drawn, extends no further than necessary to correct the violation of [the] Federal right, and is the least intrusive means necessary to correct the violation of the federal right.'" Webb v. Goord, 197 F.R.D. 98, 103 (S.D.N.Y. 2000) (quoting 18 U.S.C. §3626(a)(1)(A)). The injunctive relief sought by plaintiff is overbroad because it "extends ... further than necessary to correct" the alleged violation of plaintiff's constitutional rights. Id. Plaintiff seeks injunctive relief that would require systemic changes across the Department of Correction. This is not "the least intrusive means necessary to correct" the alleged violations of **plaintiff's** constitutional rights. 18 U.S.C. §3626(a)(1)(A).

Plaintiff's "proposed remedy is far broader than necessary to correct the alleged violation of his rights." Barrington v. New York, 806 F. Supp. 2d 730, 750 (S.D.N.Y. 2011). Plaintiff has failed to establish sufficient grounds for the injunctive relief sought, which includes systemic changes not directly related to plaintiff's needs.

Finally, "[a] claim for injunctive relief against a defendant in his or her official capacity may proceed only to the extent that the defendant named has the authority to remedy the alleged ongoing constitutional violation." Germano v. Quiros, No. 3:22CV00600(SALM), 2022 WL 3027864, at *8 (D. Conn. Aug. 1, 2022). The majority of the defendants named are line correctional staff and do not have the authority to remedy any alleged systemic constitutional violations, none of which are alleged to be ongoing as to plaintiff specifically.

Accordingly, all claims against defendants in their official capacities for injunctive relief are **DISMISSED, without prejudice.**

IV. <u>**CONCLUSION AND ORDERS**</u>

The Court enters the following orders:

The Court finds that this case may proceed to service of process on the claims for **(1)** excessive force in violation of the Eighth Amendment related to the deployment of chemical agent, against **Captain Tolmie,** in his individual capacity for damages; **(2)** retaliation in violation of the First Amendment, against **Captain Tolmie,** in his individual capacity, for damages; **(3)** failure to intervene to prevent the use of excessive force, against **Nurse Stedman, Dickison, Dr. Carhart, Lieutenant Deeb, Captain F. Syed, and Captain Hughes**, in their individual capacities for damages; **(4)** excessive force in violation of the

44

Eighth Amendment related to tight handcuffing, against **C.O. Vescera and C.O. Blekis; (5)** excessive force in violation of the Eighth Amendment related to handcuffing behind the back, against **C.O. Vescera, C.O. Pelliteri, C.O. Blekis, C.O. Mendez, and C.O. Palmieri** in their individual capacities for damages; and **(6)** state law assault and battery claims against **Captain Tolmie, C.O. Vescera, C.O. Pelliteri, C.O. Blekis, C.O. Palmieri, C.O. Mendez, and Nurse Ralph,** in their individual capacities for damages.

All claims asserted against C.O. Norton are **DISMISSED, without prejudice.**

All First Amendment retaliation claims against Dickison are **DISMISSED, without prejudice.**

All conspiracy claims against Dickison and Captain Tolmie are **DISMISSED, without prejudice.**

All Eighth Amendment excessive force claims related to the strip search are **DISMISSED, without prejudice.**

All Eighth Amendment conditions of confinement claims related to plaintiff's soiled mattress and blanket, the deprivation of toiletries, and the denial of a shower are **DISMISSED, without prejudice.**

All Fourteenth Amendment claims related to forcible medication are **DISMISSED, without prejudice.**

All claims for assault and battery against defendants Cook, Mulligan, Hannah, Dr. Burns, Dr. Patel, Captain Syed, Lieutenant Deeb, Dr. Carhart, Dickison, Norton, John Doe 1, John Doe 2, John Doe 3, and John Doe 4 are **DISMISSED, without prejudice.**

All First Amendment claims related to plaintiff's free exercise of religion are **DISMISSED, without prejudice.**

All claims against Warden Hannah, Mulligan, Cook, and Dr. Burns, are **DISMISSED, without prejudice,** for lack of personal involvement and/or for failure to state a claim.

All claims for injunctive relief against defendants in their official capacities are **DISMISSED, without prejudice.**

**Plaintiff may respond to this Order in one of two ways:**

**OPTION 1:** Plaintiff may proceed **immediately** to service of process on the claims for **(1)** excessive force in violation of the Eighth Amendment related to the deployment of chemical agent, against **Captain Tolmie**, in his individual capacity for damages; **(2)** retaliation in violation of the First Amendment, against **Captain Tolmie**, in his individual capacity, for damages; **(3)** failure to intervene to prevent the use of excessive force, against **Nurse Stedman, Dickison, Dr. Carhart, Lieutenant Deeb, Captain F. Syed, and Captain Hughes**, in their individual capacities for damages; **(4)** excessive force in violation of the Eighth Amendment related to tight handcuffing, against **C.O.**

**Vescera and C.O. Blekis**; **(5)** excessive force in violation of the Eighth Amendment related to handcuffing behind the back, against **C.O. Vescera, C.O. Pelliteri, C.O. Blekis, C.O. Mendez, and C.O. Palmieri** in their individual capacities for damages; and **(6)** state law assault and battery claims against **Captain Tolmie, C.O. Vescera, C.O. Pelliteri, C.O. Blekis, C.O. Palmieri, C.O. Mendez, and Nurse Ralph**, in their individual capacities for damages.

If plaintiff selects this option, he shall file a Notice on the docket on or before **January 13, 2023,** informing the Court that he elects to proceed with service as to the remaining defendants. The Court will then immediately begin the effort to serve process on the remaining defendants in their individual capacities.

**Or, in the alternative:**

**OPTION 2:** Plaintiff may file a Second Amended Complaint, correcting the deficiencies identified in this Order. Plaintiff is advised that any Second Amended Complaint will <u>completely</u> replace the prior Amended Complaint in the action. No portion of the Amended Complaint [Doc. #58] will be incorporated into the Second Amended Complaint by reference, or considered by the Court. Plaintiff must identify all defendants against whom he asserts his claims in the **<u>caption</u>** of the Second Amended

47

Complaint, and indicate as to each defendant whether the claims are brought against him or her in his or her official or individual capacity, or both. He must also specifically describe the factual allegations against any defendant in the body of the Second Amended Complaint. The Second Amended Complaint may not assert any claim that has already been dismissed **with prejudice.**

Any such Second Amended Complaint must be filed by **January 13, 2023**. Plaintiff is cautioned that any Second Amended Complaint must comply with the Federal and Local Rules of Civil Procedure, with special attention to Rule 8. **The Amended Complaint will not be served on any defendant and will have no effect if a Second Amended Complaint is filed.**

If a Second Amended Complaint is filed, the Court will review it pursuant to 28 U.S.C. §1915A to determine whether it is sufficient to proceed to service on any defendant. If the Second Amended Complaint asserts claims that the Court has already explained are not cognizable, such claims will be summarily dismissed. The Court may not grant further leave to amend if the Second Amended Complaint fails to state a cognizable claim.

**The Clerk shall** send a courtesy copy of the Amended Complaint and this Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

A detailed case management and scheduling order will be entered after counsel appears for any defendant.

**This Initial Review Order does not preclude the filing of a Motion to Dismiss pursuant to Rule 12.** Defendants are encouraged to carefully evaluate the claims that have been permitted to proceed to service, and respond by Answer or Motion, as appropriate.

If plaintiff changes his address at any time during the litigation of this case, he **MUST** notify the Court. Failure to do so may result in the dismissal of the case. **Plaintiff must give notice of a new mailing address even if he remains incarcerated.** Plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If plaintiff has more than one pending case, he should indicate all the case numbers in the notification of change of address. Plaintiff should also notify the defendants or the attorney for the defendants of his new address.

**Plaintiff shall utilize the Prisoner E-filing Program when filing documents with the Court.** Plaintiff is advised that the Program may be used only to file documents with the Court. The Local Rules provide that discovery materials are not filed with

the court; therefore, discovery requests and responses must be served on defendants' counsel by regular mail.

It is so Ordered at Bridgeport, Connecticut, this 5th day of December, 2022.

_____/s/_____
Hon. Sarah A. L. Merriam
United States Circuit Judge
Sitting by Designation