UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

ALEXANDER ROSA,
    *Plaintiff*,

v.

ROLLIN COOK *et al.*,
    *Defendants*.

No. 3:22-cv-703 (JAM)

**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS**

Plaintiff Alexander Rosa has filed a *pro se* complaint alleging in part that while he was imprisoned he was sprayed with a chemical agent and forcibly injected with medications in violation of his rights under the U.S. Constitution and state law. The Court previously issued an initial review order allowing many of Rosa's claims to proceed including, as relevant here, claims against two nurse defendants (Bianca Stedman and April Ralph), one social worker defendant (Lindsey Dickison), and one doctor defendant (Dr. Kathryn Carhart). Defendants Stedman, Dickison, and Carhart have filed a motion to dismiss on qualified immunity grounds. Defendant Ralph has filed a separate motion to dismiss on statutory immunity grounds. For the reasons stated herein, I will grant the defendants' motions to dismiss.

**BACKGROUND**

I take the facts as stated in Rosa's complaint and corresponding exhibits as true for the purposes of this ruling. On August 14, 2019, Rosa was transferred to the Garner Correctional Institution ("Garner") from the MacDougall-Walker Correctional Institution ("MacDougall-Walker").[1] A week later, he filed a complaint pursuant to the Prison Rape Elimination Act against MacDougall-Walker.[2] After notifying corrections officer Andrew Tolmie about the

---

[1] Doc. #58 at 3 (¶ 1).
[2] *Id.* at 3 (¶ 4).

1

complaint, Rosa was informed he would be escorted to the Inpatient Medical Unit ("I.P.M.") for a class A offense.[3]

Rosa objected, claiming that he was not engaging in any behavior that would "deserve a[n] I.P.M. trip."[4] Rosa continued to argue this point, prompting "multiple verbal interventions" with corrections officers and medical personnel.[5]

At one point during this incident, while Rosa was using the bathroom, Tolmie sprayed "chemical agents" on Rosa's "genitals while [he] was defecating."[6] After standing up, Tolmie again sprayed Rosa "onto [his] penis and face," prompting Rosa to turn around so that his "buttocks, testicles, arms, and back" were hit with a third spray.[7] For "approximately 6 to 8 times," Tolmie "relentlessly" sprayed Rosa.[8] Stedman, Dickison, and Carhart "were physically present and personally involved in this incident and could have prevented Captain Tolmie" from spraying Rosa.[9]

After he was escorted to the I.P.M., Ralph, at the direction of Dr. Patel, "gave [Rosa] 3 intramuscular shots [of] Thorazine, Benadryl, and Haldol."[10] This was "forced medication," according to Rosa, because he was "never non-compliant."[11]

Rosa filed this lawsuit on May 24, 2022 and an amended complaint followed on September 21, 2022.[12] In her initial review order of the operative complaint, Judge Merriam allowed, as relevant here, two of Rosa's claims to proceed: (1) his claim against Stedman,

---

[3] *Id.* at 3 (¶¶ 5–6), 4 (¶ 8).
[4] *Id.* at 4 (¶¶ 8–9).
[5] *Id.* at 4 (¶¶ 9–10).
[6] *Id.* at 5 (¶ 11).
[7] *Id.* at 5 (¶ 12).
[8] *Ibid.*
[9] *Id.* at 4 (¶ 10).
[10] *Id.* at 7 (¶ 20).
[11] *Ibid.*
[12] Docs. #1, #58.

Dickison, and Carhart for failure to intervene to prevent the use of excessive force by Tolmie, and (2) his claim against Ralph for assault and battery arising from the administration of medication.[13] These four defendants have moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).[14]

## DISCUSSION

The standard that governs a motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) is well established. A complaint may not survive unless it alleges facts that, taken as true, give rise to plausible grounds to sustain the Court's subject-matter jurisdiction as well as the plaintiff's grounds for relief. *See Brownback v. King*, 592 U.S. 209, 217–18 (2021); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).[15]

The Court must read the allegations of a *pro se* complaint liberally to raise the strongest arguments that they suggest. *See Meadows v. United Servs., Inc.*, 963 F.3d 240, 243 (2d Cir. 2020) (*per curiam*). Still, notwithstanding the rule of liberal interpretation of a *pro se* complaint, a complaint may not survive dismissal if its factual allegations do not meet the basic plausibility standard. *See ibid.*

A court may dismiss a claim or complaint with prejudice or without prejudice. A court should ordinarily grant leave to a *pro se* plaintiff to file an amended complaint at least once unless it is apparent that the defect warranting dismissal of a claim is of such a nature that it would be futile for the plaintiff to attempt to file an amended complaint. *See Weir v. City of New*

---

[13] Doc. #66 at 44–45. *See Rosa v. Cook*, 2022 WL 17415061 (D. Conn. 2022). The initial review order allowed several other claims against other defendants to proceed. This ruling does not address those defendants or those claims.
[14] Docs. #125, #162.
[15] Unless otherwise indicated, this order omits internal quotation marks, alterations, citations, and footnotes in text quoted from court decisions.

*York*, 2023 WL 3001136, at *2 (2d Cir. 2023) (citing *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)).

In the time since these motions to dismiss were filed, Rosa has appealed several orders issued by this Court.[16] "The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982). But "the filing of a notice of appeal only divests the district court of jurisdiction respecting the *questions raised and decided in the order that is on appeal*." *N.Y. State Nat'l Org. for Women v. Terry*, 886 F.2d 1339, 1350 (2d Cir. 1989) (emphasis added). Rosa has appealed orders denying motions for an extension of time for discovery,[17] to compel the production of video evidence,[18] for the appointment of counsel,[19] and for leave to proceed *in forma pauperis* on appeal.[20] Since the motions to dismiss do not raise questions decided in the orders that Rosa has appealed, the Court retains jurisdiction to rule on these motions. *See Patterson v. Peh I, LP*, 2007 WL 906159, at *2 & n.1 (D. Conn. 2007) (ruling on a motion to dismiss despite plaintiff's pending appeal of an order denying a motion to stay).

### *Qualified immunity*

Stedman, Dickison, and Carhart have moved to dismiss pursuant to Rule 12(b)(6), arguing in part that they are entitled to qualified immunity because Rosa has not alleged facts to show that they violated a clearly established right.[21] The doctrine of qualified immunity protects a government officer from liability for money damages stemming from a violation of the

---

[16] *See* Docs. #250, #236, #191, #189.
[17] Doc. #189.
[18] Doc. #191.
[19] Doc. #236.
[20] Doc. #250.
[21] Doc. #125 at 1.

4

Constitution if the officer engaged in conduct that an objectively reasonable officer or official would not necessarily have known at the time amounted to a violation of the plaintiff's constitutional rights. *See Horn v. Stephenson*, 11 F.4th 163, 168–69 (2d Cir. 2021). For a plaintiff to overcome a defense of qualified immunity, the plaintiff must show that the defendant violated a right of the plaintiff that was clearly established law at the time of the conduct in question. *Ibid.*

Because it is sometimes difficult for an officer to understand how legal doctrine may apply to particular facts, a court must identify the right at issue with an appropriate level of specificity that is particularized to the facts of the case. *Id.* at 169. This is not to say that there must be a prior case involving identical facts or that is directly on point, so long as existing precedent makes clear beyond reasonable debate that what the officer was doing was a violation of the plaintiff's then-recognized constitutional rights. *Ibid.*

In deciding whether the law was clearly established at the time of the alleged conduct, courts in the Second Circuit look to decisions of the U.S. Supreme Court as well as decisions of the Second Circuit, and they may also consider decisions from other federal circuit courts. *Ibid.* If these decisions either dictated or clearly foreshadowed a conclusion that the officer violated a plaintiff's constitutional rights, then this overcomes a defense of qualified immunity. *Ibid.*

The defense of qualified immunity may properly be raised at the pre-discovery, motion-to-dismiss stage because "[q]ualified immunity provides government officials 'immunity from suit rather than a mere defense to liability.'" *Looney v. Black*, 702 F.3d 701, 705 (2d Cir. 2012) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). Indeed, "[t]he driving force behind creation of the qualified immunity doctrine [is] a desire to ensure that insubstantial claims against government officials [will] be resolved prior to discovery." *Id.* at 706.

Yet when a defendant raises a defense of qualified immunity at the initial pleadings stage, a court must take care not to engage in a premature determination of the facts in a manner at odds with those facts that the plaintiff has pleaded in the complaint. The defendant presenting an immunity defense on a motion to dismiss "must therefore show not only that the facts supporting the defense appear on the face of the complaint, but also that it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Horn*, 11 F.4th at 170. "Moreover, the plaintiff is entitled to all reasonable inferences from the facts alleged, including those that defeat the immunity defense." *Ibid.*

"It has long been recognized that the duty to intervene to protect the constitutional rights of citizens from infringement by law enforcement officers applies to *law enforcement officials*, not non-police state actors." *Valverde v. Folks*, 2022 WL 836310, at *8 (S.D.N.Y. 2022); *see Phoenix v. Reddish*, 175 F. Supp. 2d 215, 220 (D. Conn. 2001) (noting that "there is no Supreme Court or Second Circuit authority that imposes an affirmative duty on a non-police state actor . . . to intervene"). The rationale here is clear, as "[u]nlike law enforcement officers such as police or corrections officers, who are sworn to uphold the law, civilian government contractors or employees have no similar duty by virtue of their position of employment." *Akande v. Philips*, 386 F. Supp. 3d 281, 292 (W.D.N.Y. 2019); *see Musso v. Hourigan*, 836 F.2d 736, 743 (2d Cir. 1988) ("As a general rule, a government official is not liable for failing to prevent another from violating a person's constitutional rights, unless the official is charged with an affirmative duty to act.").

Rosa has not alleged that Stedman, Dickison, and Carhart were law enforcement officers; indeed, he noted throughout the amended complaint that they were medical professionals.[22]

---

[22] *See* Doc. #58 at 2 (¶¶ 14–15, 19) (listing Carhart as "Doctor Psych," Dickison as "LCSW," and Stedman as "Nurse"); *see also id.* at 4 (¶¶ 8–10) (referring to "LCSW Lindsey Dickison," "Nurse Stedman," and "Psych Doctor

Thus, Stedman, Dickison, and Carhart had no "affirmative duty" to intervene to prevent the use of excessive force. In the absence of such a clearly established legal duty, they are protected under the doctrine of qualified immunity.

Accordingly, I will grant the motion to dismiss the failure-to-intervene claim with respect to Stedman, Dickison, and Carhart. Because it is apparent that any attempt to amend this claim would be futile, I will dismiss Rosa's claim with respect to Stedman, Dickison, and Carhart with prejudice. With no claims remaining against Stedman, Dickison, and Carhart, I need not address their additional grounds for dismissal.

### *Statutory immunity*

Ralph has moved to dismiss on the ground that she is entitled to statutory immunity.[23] Connecticut state law provides that "[n]o state officer or employee shall be personally liable for damage or injury, not wanton, reckless or malicious, caused in the discharge of his or her duties or within the scope of his or her employment." Conn. Gen. Stat. § 4-165(a). Rosa's claims against Ralph are based entirely on the performance of her official duties and—as Rosa alleges—at the direction of a doctor, and he does not allege facts to plausibly show that Ralph acted wantonly, recklessly, or maliciously. Rosa does not allege any grounds to suggest that Ralph knew she should not have followed the doctor's order. *See Douglas v. Stanwick*, 93 F. Supp. 2d 320, 326 (W.D.N.Y. 2000) (nurse not liable for deliberate indifference to prisoner where she

---

Kathryn Carhart"). The Court understands that "LCSW" is an abbreviation for "Licensed Clinical Social Worker," an accreditation Dickison possesses. *See* LINDSEY R DICKISON, LICENSE LOOKUP, https://www.elicense.ct.gov/Lookup/LicenseLookup.aspx (last visited Mar. 11, 2024).

[23] Ralph moves to dismiss for lack of federal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1). Doc. #162 at 1. It is the federal Constitution and Congress that control the jurisdiction of federal courts. States do not have power to enact statutes that divest a federal court of subject matter jurisdiction. So even if Conn. Gen. Stat. § 4-165 bars Rosa's state law claim, it does not divest a federal court of jurisdiction over the claim. Therefore, a dismissal on grounds of state statutory immunity against Rosa's state law claim is a dismissal for failure to state a claim under state law pursuant to Fed. R. Civ. P. 12(b)(6). *See generally Wang v. Delphin-Rittmon,* 664 F. Supp. 3d 205, 216–18 (D. Conn. 2023) (explaining how personal immunity defenses do not generally implicate a federal court's subject matter jurisdiction).

7

acted in compliance with supervising doctor's order absent allegations that nurse had grounds to know that the doctor's order was objectively unreasonable).

Accordingly, I will grant Ralph's motion to dismiss the state law assault and battery claim with respect to her. The same reasoning would similarly preclude any federal claim for constitutional liability. Because it is apparent that any attempt to amend this claim would be futile, I will dismiss this claim with respect to Ralph with prejudice.

## CONCLUSION

For the reasons set forth above, the Court GRANTS the motions to dismiss (Docs. #125, #162) with prejudice. This action shall proceed as to the remaining defendants and claims at issue.

It is so ordered.

Dated at New Haven this 11th day of March 2024.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge