## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| Alexander Rosa, | |
| Plaintiff, | Civil No. 3:22-CV-00703 (JAM) |
| v. | |
| Rollin Cook *et al.*, | August 8, 2024 |
| Defendants. | |

## RECOMMENDED RULING OF DISMISSAL

### I.    INTRODUCTION

This is a prison civil rights case.  The *pro se* plaintiff, Alexander Rosa, was incarcerated at the Garner Correctional Institution in August of 2019.  (Am. Compl., ECF No. 58, ¶ 1.)  He alleges that prison officials "relentlessly, maliciously, and sadistically . . . sprayed" him with a "chemical weapon," and "maliciously and sadistically cuffed [his] wrist so tight, it caused nerve damage." (*Id.* ¶¶ 12, 15.)  He seeks damages pursuant to 42 U.S.C. § 1983.  (*Id.* at 19–22.)

The presiding District Judge, the Honorable Jeffrey A. Meyer, referred the case to me— United States Magistrate Judge Thomas O. Farrish—to superintend the discovery phase.  (ECF No. 90.)  During this phase, Mr. Rosa repeatedly failed to appear for court conferences and repeatedly disobeyed court orders.  Most recently, he skipped a status conference on July 2, 2024 without a documented excuse.  (ECF No. 300.)  Mr. Rosa also engaged in bad faith conduct with respect to his deposition, and he was abusive to the Court and to the defendants' counsel.  I have concluded that he should be sanctioned for his conduct.

I further conclude that the appropriate sanction is dismissal with prejudice.  I recognize that that sanction is "to be used only in extreme situations, and then only when a court finds

1

willfulness, bad faith, or any fault by the non-compliant litigant." *Agiwal v. Mid Island Mortg. Corp.*, 555 F.3d 298, 302 (2d Cir. 2009) (internal quotation marks omitted).  In this case, however, Mr. Rosa's conduct has indeed been willful and in bad faith, and no lesser penalty is likely to achieve the purposes of sanctions.  (*See* discussion, Section III *infra*.)  Indeed, Mr. Rosa evidently *wants* his case to be dismissed.  He seems to have concluded that he cannot get justice from me or Judge Meyer, and he apparently wants his case dismissed so he can try his luck at the Court of Appeals.  (ECF No. 268-2) (e-mail from A. Rosa to defendants' counsel, stating that he would "force Farrish to dismiss [his] complaint" so he could "raise an argument in the appellate court").

As a Magistrate Judge, I ordinarily cannot dismiss a case.  I can only recommend that the District Judge do so.  *Pal v. Canepari*, No. 3:20-cv-13 (MPS) (TOF), 2021 WL 8323639, at *14 (D Conn. Mar. 15, 2021), *report and recommendation accepted and adopted*, 2021 WL 8362143 (D. Conn. May 27, 2021).  For the reasons discussed in Section III.A below, I recommend that Judge Meyer dismiss Mr. Rosa's case with prejudice under Federal Rules of Civil Procedure 16(f)(1) and 37(b)(2)(A)(v).  And as discussed in Section III.B, the Court may also dismiss his case under its inherent authority to sanction bad faith conduct.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

Mr. Rosa filed this case on May 24, 2022.[1]  (Compl., ECF No. 1.)  He was relatively cooperative at the beginning; for example, he attended the initial Rule 16 conference and agreed with the defendants on a schedule that called for discovery to be concluded by November 3, 2023.  (*See* ECF No. 143.)  To be sure, the early phase of the case was not entirely free of untoward

---

[1]     Mr. Rosa currently has four other cases pending in the District of Connecticut.  *Rosa v. Doe et al.*, No. 3:21-cv-481-JAM; *Rosa v. Cook et al.*, 3:22-cv-865-JAM; *Rosa v. Conn. Jud. Branch et al.*, No. 3:24-cv-85-JAM; *Rosa v. Comm'r of Corr.*, No. 3:24-cv-753-SVN.

conduct, including repeated re-filings of unmeritorious motions (*see, e.g.*, ECF Nos. 39, 137) (second and third motions for appointment of counsel, after first motion had been denied at ECF No. 20) and a threat to "bully the courts." (ECF No. 29.) But during this phase, his conduct was not as abusive and obstructionist as it would later become.

The change seems to have been triggered by a discovery dispute. As noted above, Mr. Rosa's case arises out of pepper spray and handcuffing incidents at the Garner Correctional Institution. (Am. Compl., ECF No. 58, ¶¶ 12, 15.) The incidents were captured on video, and Mr. Rosa understandably asked the defendants to produce the recordings. (*E.g.,* ECF No. 182.) The defendants agreed to do so, but because they were concerned about widespread distribution of video showing the inside of a prison, they declined to simply e-mail the video files to him. (*See* ECF No. 186.) Mr. Rosa had been released from prison at this point, so the defendants instead provided the files to a parole officer, and they told Mr. Rosa that he could view the videos at the parole office. (ECF Nos. 184, 184-1.) Having discharged from parole, Mr. Rosa became upset at the suggestion that he had to meet with a parole officer to see the videos. He filed a motion to compel his preferred form of production. (ECF No. 182.)

The Court held a hearing on August 29, 2023. (ECF No. 185.) Mr. Rosa showed up late, and he shouted and interrupted the Court throughout. Afterward, the Court entered an order denying his motion for failure to comply with the meet-and-confer requirement of D. Conn. L. Civ. R. 37. (ECF No. 186.) The order also explained that the rules do not require a defendant to e-mail responsive documents to the plaintiff; rather, "Rule 34 is clear that the defendants can satisfy their production obligations by making the requested materials available for inspection, and they have done so." (*Id.*) (citing Fed. R. Civ. P. 34(a)(1) and *Simms v. Ctr. for Corr. Health & Policy Studies*, 272 F.R.D. 36, 39-40 (D.D.C. 2011)). But in an effort to guide the meet-and-confer

process that it hoped would ensue, the Court appended the following paragraph to the end of the order:

> At today's hearing, Mr. Rosa was combative and hostile.  The following point may therefore have gotten lost, but ***the Court wishes to be clear that Mr. Rosa is entitled to production of all relevant video evidence***, subject to reasonable controls to address the defendants' safety and security concerns.  If Mr. Rosa does not want to interface with [the parole officer], he may wish to engage in a cooperative, respectful dialog with Attorney Mancini about whether there is another person who can serve as the conduit, or another method of production that will both (a) get him access to the videos while (b) addressing the defendants' safety and security concerns.  But neither the defendants nor the Court is saying that he is not entitled to production of relevant video evidence.

(*Id.*) (emphasis in original).

Instead of "engag[ing] in a cooperative, respectful dialog," Mr. Rosa became increasingly uncooperative.  About five weeks after the hearing, the defendants noticed his deposition for October 24, 2023.  (ECF No. 202-1.)  Mr. Rosa failed to appear (ECF No. 202-2), and although he would later claim to have been prevented from doing so by the police (ECF No. 202, at 2), he did not document that claim.  Apparently anticipating that Mr. Rosa would not appear in response to a second deposition notice either, the defendants moved for an order compelling him to do so. (ECF No. 209.)  The Court was constrained to deny that motion for non-compliance with D. Conn. L. Civ. R. 37 and for other, technical reasons (ECF No. 211), but it ordered the parties to attend a telephonic discovery status conference on December 15, 2023.  (ECF No. 212.)  The purpose of the conference was to resolve any impediments to the orderly taking of the plaintiff's deposition, and to resolve any remaining disputes over the production of the prison videos.  (*Id.*) ("Parties should be prepared to discuss the plaintiff's deposition, the defendants' production of video to the plaintiff, and any other issues affecting the discovery schedule.").

Although the conference agenda was thus designed to address the very issue that Mr. Rosa claimed to care deeply about—the production of the prison video—he nevertheless did not appear.

(*See* ECF No. 216) (conference memorandum recording that "[t]he plaintiff did not appear, despite the Clerk having mailed a copy of the order to his address of record").   Afterward, the Court ordered Mr. Rosa to show cause why he should not be sanctioned for his non-appearance.   (*Id.*) To encourage him to appear for his deposition at the time set forth in the second notice—which was then only eight days away—the Court warned him that "[p]arties who fail to attend a properly-noticed deposition without excuse may be subject to sanctions under Rule 37(d) of the Federal Rules of Civil Procedure."   (*Id.*)

Mr. Rosa filed three documents in response  to the show cause order.   (ECF Nos. 218, 219, 220.)   He claimed to have missed the conference because he was "locked out" of PACER and could not access the call-in number, and because he had been involved "in a physical altercation" with someone only moments before.   (ECF No. 219, at 1–2.)   But he also raised three other arguments that would become themes over the coming months.   First, he wrote that he was then involved in twenty-two state and federal lawsuits, and he argued that it was "hard to keep up with all these cases."   (ECF No. 218, at 1; ECF No. 219, at 1.)   Second, he claimed that his halfway house had thrown out some of his case documents (ECF No. 218, at 1), and he contended that the defendants were somehow responsible for their destruction.   (ECF No. 220, at 2.)   Third, he reported that he still had not resolved the video production issue—even though the Court had explained how he might do so—and he argued that he could not be expected to answer the defendants' deposition questions until he had seen the video.   (ECF No. 218, at 1.)

Three days later, the Court entered an order in which it declined to sanction Mr. Rosa. (ECF No. 221.)   The Court explained that "the fact that the plaintiff has twenty-one other court matters does not excuse him from failing to comply with court orders in this one."   (*Id.*) Nevertheless, it accepted his undocumented "physical altercation" claim as "an adequate

explanation for his absence." (*Id.*)  The Court rescheduled the discovery conference to January 5, 2024, and it again placed the video production issue on the agenda.  (ECF No. 222.)  It added that if Mr. Rosa missed the second conference, "sanctions [would] likely enter unless" he had the best of excuses.  (*Id.*)  It also explained that any such excuse would have to be "well-documented." (*Id.*)

The same day that the Court entered this order, Mr. Rosa failed to appear in response to the defendants' second deposition notice.  (*See* ECF No, 225, at 1) (noting "the plaintiff's failure to attend his duly noticed deposition on December 21, 2023").  The defendants then moved for sanctions, seeking "dismissal of the instant action" or "alternative sanctions," including an order that he pay "$212.40, the expenses . . . caused by his failure to attend his two depositions" and an additional "monetary sanction to the Court."  (ECF No. 225-1, at 1, 7.)

Mr. Rosa then failed to appear for the discovery conference scheduled for January 5, 2024. (ECF No. 231.)  The Court issued another show cause order, and this time it made clear – in bold type – that "**sanctions for repeated violations of court orders can include dismissal of the case**." (*Id.*) (emphasis in original).

On January 25, 2024, Mr. Rosa filed his opposition to the defendants' motion for sanctions. (ECF No. 235.)  He called defense counsel "an absolute compulsive liar," accused him of ordering "the 'halfway house' to throw the [plaintiff's] legal documents away into the garbage," and claimed that his non-appearances were defense counsel's fault.  (ECF No. 235, at 3–5.)  Mr. Rosa claimed that his having lost his copy of the defendants' initial discovery disclosures was evidence of a conspiracy to undermine his litigating this matter effectively, and that "the courts should deny the . . . motion to sanction" because he "still need[ed] to conduct request for admission and to compel the defendants to answer relevant questions." (*Id.* at 7.)  The only reference to the missed

depositions was a claim that he was unable to "counter or respond to any depositional questions" because he had lost his documents. (*Id.* at 3–4.)

Instead of sanctioning Mr. Rosa at that time, the Court directed him to identify three dates on which he could attend proceedings on the motion for sanctions by telephone. (ECF No. 240.) Mr. Rosa did not comply. The Court nevertheless scheduled another telephonic hearing. (ECF No. 255.) The notice clearly indicated that Mr. Rosa's "failure to attend the hearing, unless properly excused in advance, [would] likely result in the undersigned recommending to the District Judge that the case be dismissed." (*Id.*) In the month between his objection to the motion for sanctions and the February 23, 2024 hearing, Mr. Rosa found the time to file seven new motions and two interlocutory appeals. (ECF Nos. 236, 237, 241, 247, 248, 250, 256, 257, 258.)

At the hearing, Mr. Rosa told the Court multiple times that he would sit for his deposition. (Mot. Hrg. Tr., ECF No. 270, at 4:10–12; 6:14–18; 9:24–25; 13:10–17.) He also said, however, that he had "a more important case than this" and was "not worrying about this case." (*Id.* at 14:18–19, 15:3–5.) Mr. Rosa became upset when defense counsel pointed out that he had recently failed to appear for a deposition in another matter. (*Id.* at 11:8–13:6.) The Court told him that, while it hoped "to get things keyed up for a decision on the merits," he was "very close to having [his] case dismissed over not playing by the discovery rules." (*Id.* at 14:12–17.) It warned him several times that failing to appear or refusing to participate in good faith at his deposition would result in a recommendation that this case be dismissed and the imposition of "additional sanctions," including "a monetary order that [he] pay the cost of the court reporting." (*Id.* at 14:1–9, 16:23–25, 17:10–18.) At the close of the hearing, the Court explained that Mr. Rosa should "show up" and "answer [defense counsel's] questions without a lot of sass and without a lot of objections." (*Id.* at 24:24–25:13.) He indicated that he understood. (*Id.* at 25:14.) To leave no doubts, the

Court issued an order immediately thereafter explaining that Mr. Rosa had "agreed to sit for a deposition" and "to answer the questions put to him," and that any deviation from this would result in a recommendation that the District Judge "dismiss this action" and possible "monetary sanctions." (ECF No. 265.)

Six days later, Mr. Rosa struck a different and more defiant tone in a pre-deposition e-mail exchange with defense counsel. He requested "the video evidence and the incident report before deposition" so he could "prepare [his] answers." (ECF No. 268-2, at 2.) He then told defense counsel that if the video and incident report were not produced on his terms, he would "refuse to answer" every deposition question because he did not "have access to the video evidence nor incident report because the opposing attorney denied my request." (*Id.*) He ordered defense counsel to "cough . . up" the materials, otherwise he would "force Farrish to dismiss [his] complaint[.]" (*Id.*) He added that he would then "raise an argument in the appellate court that you denied me incident report and video evidence." (*Id.*)

Mr. Rosa followed through on his threats at the deposition on March 4, 2024. The trouble began early, as defense counsel was reviewing the "usual stipulations." When asked if he agreed that objections other than to the form of the question would be reserved for trial, Mr. Rosa did not answer, but instead said that he was "not happy with this deposition at all." (ECF No. 268-1, at 6:23–7:3.) Although the defendants had first noticed his deposition months before, he claimed that he "wasn't prepared," in part because his case "documents got thrown out by the halfway house." (*Id.* at 7:4, 11:1–2.) When asked if he would nevertheless "participate in this deposition today," he responded that he would, "but you're not going to get what you want, brother." (*Id.* at 12:11–12.) He elaborated that he was "not going to answer the questions that you want me to answer. . . I'm just going to say unprepared, didn't have the legal documents." (*Id.* at 12:14–17.)

Defense counsel reminded him that his refusal to participate would likely result in consequences (*id.* at 13:20–21), but Mr. Rosa responded that he was "willing to take the consequences on this" because he planned to "appeal this decision." (*Id.* at 14:13–15.)

Soon afterward, the State of Connecticut incarcerated Mr. Rosa again. (*See* ECF No. 272) (April 5, 2024 change of address notice, indicating that Mr. Rosa then resided at the Bridgeport Correctional Center). During this period of incarceration, he doubled down on his invective, and he began to direct it at the Court as well as the defendants. In one filing, he complained that he "is getting sick and tired of crooked judges and crooked assistant attorney generals [sic]" before seemingly challenging defense counsel to "come in a ring with me [and] put some boxing gloves on." (ECF No. 279, at 2.) He wrote that "God . . . will make you burn in hellfire you scums of the Earth" and that "law isn't going to save you or those judges who are satanic worshippers!!!" (*Id.*) He again suggested that he does not care about the outcome of this case—including, presumably, whether it is dismissed as a sanction for his conduct (*see id.* at 3) ("I don't give a f*** about this case")—and he demonstrated a decided lack of respect for opposing counsel and the legal process in general. (*See id.*) ("F*** you! . . . F*** case laws!"). In another filing, he contended that the Court and the defendants were playing "a game," and that he therefore was likewise entitled to treat his filings as "a game." (ECF No. 284, at 1) ("Be prepared for an objection to the Magistrate[ Judge']s ruling! It[']s a game to yall [sic] so it[']s a game to me, LOL!").

Despite these filings, the Court made one final attempt to salvage things after the State of Connecticut released Mr. Rosa from the Bridgeport Correctional Center. It issued an order for a telephonic status conference to be held on July 2, 2024, "to discuss scheduling and general compliance with deadlines and court orders going forward." (ECF No. 299.) Despite the order's language indicating that "**attendance and participation at this court-ordered conference is**

**mandatory**" and that "***sanctions may – and very likely will – enter***" if Mr. Rosa did not attend, he once again failed to appear.  (*Id.*)  The Court warned him again—this time, in bold, underlined, and italicized type—that "***sanctions for repeated violations of court orders can include dismissal of the case.***"  (*Id.*) (emphases in original).

Two weeks later, Mr. Rosa filed a document purporting to explain his non-appearance. (ECF No. 301.)  Despite the clear requirement in the scheduling order that sanctions would enter absent "**the very best of well-documented reasons**" for his absence (ECF No. 299) (emphasis in original), he attached no supporting documentation to substantiate his claims.  Faced with yet another instance of non-compliance with orders, I considered *sua sponte* whether the time has come to dismiss Mr. Rosa's claims.  The results of my analysis follow below.

## III. DISCUSSION

### A. Dismissal under Rules 16 and 37

Federal Rule of Civil Procedure 16(f)(1) provides that "[o]n motion or on its own, the court may issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii), if a party . . . (A) fails to appear at a scheduling or other pretrial conference; . . . or (C) fails to obey a scheduling or other pretrial order."  Fed. R. Civ. P. 16(f)(1).  One of the "orders" "authorized" by the latter rule is an order "dismissing the action or proceeding in whole or in part."  Fed. R. Civ. P. 37(b)(2)(A)(v).

In deciding whether to order some sanction under Rule 16, "the court need not find that a party acted in bad faith."  *Bryan v. Niagara Bottle Water Inc.*, No. 3:18-cv-231 (KAD) (SALM), 2018 WL 11509560, at *2 (D. Conn. Dec. 13, 2018), *report and recommendation accepted and adopted*, slip op. (D. Conn. Jan. 29, 2019) (quoting *Petrisch v. JP Morgan Chase*, 789 F. Supp. 2d 437, 454 (S.D.N.Y. 2011)).  "The fact that a pretrial order was violated is sufficient to allow some

sanction." *Petrisch*, 789 F. Supp. 2d at 454 (quoting C. Wright *et al.*, 6A Federal Practice and Procedure § 1531 (3d ed. 2010)).

In this case, Mr. Rosa has failed to appear at pretrial conferences and has violated court orders on multiple occasions.  As noted above, he failed to appear at the December 15, 2023 discovery teleconference.  (ECF Nos. 212, 216.)  While the Court did not sanction him at that time, he then failed to appear for the rescheduled discovery teleconference on January 5, 2024.  (ECF Nos. 222, 231.)  After *that* non-appearance, the Court directed him to identify three dates on which he could attend proceedings by telephone (ECF No. 240), but he did not do so.  Mr. Rosa then failed to attend the July 2, 2024 telephonic status conference (ECF Nos. 299, 300), and when he attempted to explain his absence, he violated court orders yet again.  The Court had directed that any such excuse be "well-documented" (ECF No. 299), but Mr. Rosa provided no documentation. (ECF No. 301.)  In summary, he has failed to appear for court conferences and has violated court orders on multiple occasions.  Clearly, he should face some form of sanction.

In deciding whether to order the specific sanction of dismissal, courts consider four principal factors.  *Agiwal*, 555 F.3d at 302–03; *Bryan*, 2018 WL 11509560, at *3.  First, they consider "the willfulness of the non-compliant party or the reason for noncompliance."  *Agiwal*, 555 F.3d at 302.  Second, they analyze "the efficacy of lesser sanctions."  *Id.*  Third, they consider "the duration of the period of noncompliance," and fourth, "whether the non-compliant party has been warned of the consequences of . . . noncompliance."  *Id.* (quoting *Nieves v. City of New York*, 208 F.R.D. 531, 535 (S.D.N.Y. 2002)).  In applying these factors, courts keep in mind that "[d]ismissal under Rule 37 is an extreme sanction, to be imposed only in extreme circumstances." *Jones v. Niagara Frontier Transp. Auth.*, 836 F.2d 731, 734 (2d Cir. 1987).  Nevertheless, "[t]he severe sanction of dismissal with prejudice may be imposed even against a plaintiff who is

proceeding *pro se*, so long as a warning has been given that noncompliance can result in dismissal." *Valentine v. Museum of Modern Art*, 29 F.3d 47, 50 (2d Cir. 1994).

Having carefully considered these four factors and other, relevant considerations, I recommend that Judge Meyer dismiss Mr. Rosa's case with prejudice. To begin with, Mr. Rosa's non-compliance is plainly "willful" in the contemplation of the law. "Non-compliance may be deemed willful when the court's orders have been clear, when the party has understood them, and when the party's non-compliance is not due to factors beyond the party's control." *Abreu v. City of New York*, 208 F.R.D. 526, 530 (S.D.N.Y. 2002); *see also Pal*, 2021 WL 8323639, at *9 (same). In this case, there was nothing unclear about the orders that Mr. Rosa disobeyed. Those orders simply directed him to call in to teleconferences (ECF Nos. 212, 222, 299), and to provide documentation if he found himself unable to attend without having been previously excused. (ECF No. 299.) In his various attempts to explain his non-compliance, Mr. Rosa has never claimed not to have understood the orders. (*See, e.g.,* ECF Nos. 219, 301.)

To be sure, Mr. Rosa does claim that his non-compliance was "due to factors beyond [his] control," at least in part. And when those claims have not been obviously false, the Court has refrained from sanctioning him and has instead given him additional chances to comply. (*See, e.g.*, ECF No. 221) (declining to sanction absence from December 15, 2023 teleconference on account of his claim to have "been in a physical altercation only moments before"). But many such claims have been plainly untrue. For example, Mr. Rosa claimed to have missed the December 15, 2023 conference in part because he had been "locked out" of PACER and could not obtain the call-in number, and because the Clerk's Office was allegedly "closed" when he tried to call for the number (ECF No. 219), but neither PACER nor the Clerk's Office were unavailable that day. He claims to have missed the July 2, 2024 teleconference because it "was scheduled to

[him] without notice" (ECF No. 301), but the Clerk documented that she sent him notice a full

week in advance.  Mr. Rosa further claims to have missed the July conference because his phone

had been stolen "between June 10th or 12th," leaving him "unable to contact the court" (ECF No.

301), but nothing prevented him from communicating with the Court in writing – or from simply

visiting the Bridgeport Clerk's Office, which is only about fifteen blocks from his address of

record.  And precisely because Mr. Rosa has been untruthful on so many occasions, the Court has

repeatedly directed him to document the reasons for any non-appearances (ECF Nos. 222, 231,

299), but he did not comply with these directives either.  In short, because Mr. Rosa has not come

forward with sufficient—and sufficiently documented—reasons for supposing that his non-

compliance was "due to factors beyond [his] control," the Court concludes that the non-compliance

was willful.  *See Bryan*, 2018 WL 11509560, at *3 (inferring willfulness from the plaintiff's failure

to come forward with a plausible "ameliorating explanation" for skipping court conferences).

The "efficacy of lesser sanctions" factor likewise favors dismissal.  Monetary sanctions

would be ineffective because Mr. Rosa is indigent and intermittently homeless, at least when he is

not incarcerated.  (ECF Nos. 2, 219); *see also Bhatia v. Pitney Bowes, Inc.*, No. 3:04-cv-1484

(RNC), 2006 WL 2661143, at *1 (D. Conn. Sept. 14, 2006) ("Monetary sanctions cannot be relied

on because the plaintiff is indigent.").  Moreover, the Court can infer that lesser sanctions would

be futile where, as here, the party's non-compliance persisted despite repeated warnings that

dismissal could result.  *See, e.g., Secs. & Exch. Comm'n v. Razmilovic*, 738 F.3d 14, 27 (2d Cir.

2013), *as amended* (Nov. 26, 2013) (stating that "[a]lthough [the defendant] disobeyed only that

single court order, his adamance in the face of the court's warning of possible sanctions that

included the extreme sanction of default clearly supported an inference that renewed orders . . .

would be unavailing and that no lesser sanction would be effective to induce [the defendant]" to

comply); *Naguib v. Pub. Health Sols.,* No. 12-CV-2561 (ENV/LB), 2014 WL 3695946, at *4 (E.D.N.Y. June 16, 2014) ("It is clear that that the Court's stern warnings that her case would be dismissed if she failed to appear have not been effective in prompting plaintiff's compliance.  In light of plaintiff's history here, any lesser sanction than dismissal would be futile."), *report and recommendation adopted,* No. 12-CV-2561 (ENV/LB), 2014 WL 3695965 (E.D.N.Y. July 24, 2014); *Brissett v. Manhattan & Bronx Surface Operating Auth.*, No. 09 CV 874 (CBA/LB), 2011 WL 1930686, at *4 (E.D.N.Y. Apr. 20, 2011) ("[L]esser sanctions would not be effective, given that the Court has warned plaintiff that she would face the severest sanction of dismissal, and yet such warning went unheeded."), *report and recommendation adopted*, 2011 WL 1930682 (E.D.N.Y. May 19, 2011), *aff'd*, 472 F. App'x 73 (2d Cir. 2012); *RLI Ins. Co. v. May Constr. Co., Inc.,* No. 09 Civ. 7415 (PKC), 2011 WL 1197937, at *3 (S.D.N.Y. March 22, 2011) ("The fact that defendant was warned that noncompliance would result in striking his answer and chose not to comply illustrates that lesser sanctions would be insufficient to remedy his failure").

The "duration of the period of non-compliance" factor favors dismissal as well.  Mr. Rosa skipped not one, but three, pretrial conferences stretching over a period of nearly seven months. (ECF Nos. 216, 231, 300.)  He was first directed to document any unexcused absences over seven months ago (ECF No. 222), but he has never done so.  (*See* ECF Nos. 235, 301.)  For many months he has been unable to comply with even the simplest orders, such as the order directing him to submit three dates on which he could be available for a rescheduled teleconference.  (ECF No. 240.)  Such lengthy non-compliance supports dismissal, particularly when combined with a high degree of willfulness.  *E.g., Wellington v. Foland*, No. 3:19-cv-457 (GTS) (ML), 2020 WL 6822945, at *3 (N.D.N.Y. Nov. 20, 2020) (dismissing case involving three months' non-

compliance with orders, where "the Court held three telephone conferences and issued three separate Orders," and where the plaintiff's continued refusal to comply was "blatant and willful").

Finally, the fourth *Agiwal* factor also supports dismissal here.  The Court repeatedly warned Mr. Rosa that if he did not comply with orders, his case might be dismissed.  Over seven months ago, it "respectfully advised" him that "**sanctions for repeated violations of court orders can include dismissal of the case.**"  (ECF No. 231) (emphasis in original).  A month later it told him yet again "that failure to attend [a] hearing, unless properly excused in advance, will likely result in the [Magistrate Judge] recommending to the District Judge that the case be dismissed."  (ECF No. 255.)  And on June 25, 2024 the Court warned him that if he failed to appear for the following week's telephonic status conference without a well-documented excuse, "***sanctions may – and very likely will – enter against him . . . includ[ing] dismissal of the case.***"  (ECF No. 299) (emphasis in original).

In applying the four *Agiwal* factors, I have carefully considered the fact that Mr. Rosa is a *pro se* litigant.  Because they generally lack legal experience and knowledge, self-represented parties are "granted special leniency regarding procedural matters."  *LeSane v. Hall's Secs. Analyst, Inc.*, 239 F.3d 206, 209 (2d Cir. 2001).  Consequently, courts should not be quick to impose the "harsh remedy" of dismissal when the party is representing himself.  *See Lucas v. Miles*, 84 F.3d 532, 535 (2d Cir. 1996).  Yet this leniency is not unlimited, and "all litigants, including pro ses, have an obligation to comply with court orders.  When they flout that obligation they, like all litigants, must suffer the consequences of their actions."  *McDonald v. Head Criminal Court Supervisor Officer*, 850 F.2d 121, 124 (2d Cir. 1988).  In other words, *pro se* litigants are entitled to some degree of special solicitude, but they "are not immune to dismissal as a sanction for noncompliance with discovery orders."  *Agiwal*, 555 F.3d at 302.  Sanctioning a *pro se* litigant

by dismissing some or all of his claims "may be appropriate so long as a warning has been given that non-compliance can result in dismissal." *Id.* (internal quotation marks omitted). That is the case here, for the reasons previously discussed. Because all four *Agiwal* factors support doing so, I recommend that Judge Meyer dismiss Mr. Rosa's case with prejudice under Rules 16(f)(1) and 37(b)(2)(A)(v).

### B.     Dismissal under the Court's Inherent Powers

Rules 16(f)(1) and 37(b)(2)(A)(v) work together to provide a basis for dismissal when a party fails to appear at court conferences or to obey court orders. But sometimes parties engage in other sanctionable conduct. When they do, there is another available basis for sanctions: the Court's "inherent power."

"It has long been understood that certain implied powers must necessarily result to our Courts of justice from the nature of their institution, powers which cannot be dispensed with in a Court, because they are necessary to the exercise of all others." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (citing *United States v. Hudson*, 7 Cranch 32, 34 (1812)) (internal quotation marks omitted). Courts are therefore "vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates." *Id.* (quoting *Anderson v. Dunn*, 6 Wheat. 204 (1821)). This inherent power includes "the ability to fashion an appropriate sanction for conduct which abuses the judicial process." *Id.* at 44–45.

Before ordering any sanction under its inherent power, the Court must find that the plaintiff acted in bad faith. *See Rossbach v. Montefiore Med. Ctr.*, 81 F.4th 124, 143 (2d Cir. 2023); *DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 136 (2d Cir. 1998). "That bad faith must be shown by (1) 'clear evidence' or (2) 'harassment [*sic*] or delay or . . . other improper purposes.'"

*DLC Mgmt. Corp.*, 163 F.3d at 136 (quoting *United States v. Int'l Bhd. of Teamsters*, 948 F.2d 1338, 1345 (2d Cir. 1991)).

Here, Mr. Rosa has plainly engaged in bad faith with respect to his deposition, in addition to the other bad faith conduct identified in Section III.A above.  He did not appear for the deposition the first time it was noticed.  (ECF No. 202.)  The Court advised him that "[p]arties who fail to attend a properly noticed deposition without excuse may be subject to sanctions" (ECF No. 216)—but, despite receiving this advice, he did not appear the second time either.  (ECF No. 225-7.)  After his second non-appearance the Court convened a teleconference, during which it explained the deposition process to him in detail, and also explained that failing to appear or refusing to participate in good faith at his deposition would result in a recommendation that his case be dismissed.  (ECF No. 270, at 6:4–9, 10:9–17, 14:1–9, 16:23–25, 17:10–18.)  After receiving this information, Mr. Rosa promised the Court and the defendants that he would "appear for [his] deposition" and not "give [examining counsel] a lot of objections and back talk."  (*Id.* at 13:10–17.)  He further promised that he was "just going to give [examining counsel] truthful answers to his questions."  (*Id.* at 13:15–17.)  Yet when he appeared for his deposition just days later, he broke these promises and gave the defendants' attorney nothing but back talk and unmeritorious objections, and he did not provide a substantive answer to even a single question.  (ECF No. 268-1.)  Because clear evidence establishes Mr. Rosa's bad faith, the Court may sanction him under its inherent power.  *Rossbach*, 81 F.4th at 143.

This is true even though the Court did not expressly order Mr. Rosa to sit for his deposition under Rule 37(a).  "Even in the absence of a discovery order, a court may impose sanctions on a party for misconduct in discovery under its inherent power to manage its own affairs."  *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 106–07 (2d Cir. 2002).  In this case, the

Court was constrained to deny the defendants' motion for an order under Rule 37(a) because they had not complied with the meet-and-confer requirement and other procedural prerequisites. (*See* discussion, Section II *supra; see also* ECF No. 211.) Even so, Mr. Rosa could not reasonably have misunderstood what the law required of him. The Court patiently explained his obligations to appear for his deposition, to provide truthful answers to the defendants' questions, and to refrain from objecting unless he had "a good bona fide reason under Rule 30 for doing otherwise." (ECF No. 270, at 4:6–12, 6:4–13, 10:14–16, 13:15–16.) Moreover, Mr. Rosa could not have reasonably misunderstood the potential consequences of his failure to do these things. The Court warned him that he was "getting very close to having [his] case dismissed over not playing by the discovery rules[.]" (*Id.* at 14:12–14.) And it added that if he did not appear or he refused to fulfill his obligations to participate in his deposition, it would "recommend to Judge Meyer that [his] case be dismissed." (*Id.* at 16:23–25.)

In deciding whether Mr. Rosa should face the specific sanction of dismissal, the Court again considers the four *Agiwal* factors. Yet because the inherent power encompasses more than skipping court conferences and disobeying court orders, there is more to say here than there was in Section III.A. With respect to the first factor—"the willfulness of the non-compliant party or the reason for noncompliance"—Mr. Rosa clearly engaged in willful conduct with respect to his deposition, in addition to his willful refusal to attend court conferences. Indeed, in *Agiwal* itself, the Court observed willfulness in the plaintiff's "noncompliance, including his failure to appear at three scheduled depositions." 555 F.3d at 303. Here, Mr. Rosa failed to appear at two depositions, and refused to answer questions at a third. With respect to the second factor—the "efficacy of lesser sanctions"—a court can infer that no lesser sanction would be effective when the non-compliant party has been repeatedly warned of the possibility of dismissal, yet still refuses to

comply.  *E.g., Naguib*, 2014 WL 3695946, at *4.  That is the case with Mr. Rosa's deposition as well as his non-appearance at court conferences; he was repeatedly warned that his failure to submit to a deposition would likely result in dismissal, yet he did not comply.  (*Cf.* ECF No. 216; *see also* ECF No. 265; ECF No. 270, at 14:12–14, 16:23–25.)  The third factor—the "duration of the period of noncompliance"—is even longer in the case of the deposition than in the case of Mr. Rosa's non-appearance at court conferences; the defendants have been trying to depose him without success since October 24, 2023.  (ECF No. 202-1.)  And the fourth factor—"whether the non-compliant party has been warned of the consequences of non-compliance"—is as true with respect to the deposition as it is with respect to the non-appearances at court conferences.  (ECF No. 216; ECF No. 265; ECF No. 270, at 14:12–14, 16:23–25.)  In short, all four *Agiwal* factors support dismissal under the Court's inherent power as well as under Rules 16(f)(1) and 37(b)(2)(A)(v).

In applying these factors to the inherent power analysis, I have again considered Mr. Rosa's *pro se* status, as I did in the Rule 16/Rule 37 analysis.  In several cases where *pro se* plaintiffs refused to sit for a deposition, courts have found that the "harsh remedy" of dismissal was warranted.  In *McDonald*, for example, the Court of Appeals affirmed the dismissal of a complaint with prejudice after the self-represented plaintiff "refused to answer various questions" during his deposition, despite being fully aware of "his obligation to answer the questions put to him." 850 F.2d at 123–24. Similarly, in *Torres v. Levesque*, 52 F.App'x. 155, 156 (2d Cir. 2002) (summary order), the Court of Appeals upheld the District Judge's dismissal of a case in which a *pro se* plaintiff's refusal "to submit to a deposition made it impossible to render a determination on the merits."  And in *Barclay v. Doe*, 207 F. App'x 102, 104 (2d Cir. 2006) (summary order), the Court of Appeals found no error after the District Court dismissed the *pro se* plaintiff's case after he

refused to attend a deposition even after being warned "that non-compliance with the deposition may lead to sanctions . . .  including dismissal of the complaint." (internal quotation marks omitted).  In circumstances such as these, "[t]he severe sanction of dismissal with prejudice may be imposed even against a plaintiff who is proceeding *pro se,* so long as a warning has been given that noncompliance can result in dismissal."  *Id.* (quoting *Valentine*, 29 F.3d at 50.  Thus, even though Mr. Rosa represented himself in this case, a recommendation of dismissal under these circumstances is not unprecedented or even unusual.  "[S]pecial solicitude for the difficulties that a *pro se* plaintiff must face does not extend to the wilful, obstinate refusal to play by the basic rules of the system upon whose very power the plaintiff is calling to vindicate his rights."  *McDonald v. Head Criminal Court Supervisor Officer*, 117 F.R.D. 55, 58 (S.D.N.Y. 1987), *aff'd*, 850 F.2d 121 (2d Cir. 1988).

## IV.    CONCLUSION AND RECOMMENDED RULING

For the foregoing reasons, I recommend that Judge Meyer dismiss Mr. Rosa's complaint with prejudice and enter judgment in favor of the defendants.

This is a recommended ruling by a Magistrate Judge.  Mr. Rosa has the right to file an objection to my recommendation with Judge Meyer.  **If he wishes to object, he must do so in writing within nineteen days**.  *See* 28 U.S.C. § 636(b)(1) ("Within fourteen days after being served with a copy, any party may serve and file written objections to . . . findings and recommendations as provided by rules of court."); Fed. R. Civ. P. 72(b)(2) (stating that parties may "file specific written objections" to Magistrate Judges' recommendations "[w]ithin 14 days after being served with a copy of the recommended disposition"); D. Conn. L. Civ. R. 72.2(a) (adding five days for litigants who, like Mr. Rosa, will receive notice of the recommendation by mail rather than electronically); *see also* Fed. R. Civ. P. 6 (explaining how time periods are

computed).  **If Mr. Rosa fails to object within the required time, he "may not thereafter assign as error a defect in the" Magistrate Judge's recommendation**.  D. Conn. L. Civ. R. 72.2(a).  **Failure to file a timely objection will also bar appellate review by the Second Circuit Court of Appeals**.  *See* 28 U.S.C. § 636(b)(1); *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) ("[F]ailure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision."); *accord Impala v. U.S. Dep't of Justice*, 670 F. App'x 32 (2d Cir. 2016) (summary order).

/s/ Thomas O. Farrish

Hon. Thomas O. Farrish
United States Magistrate Judge